MISSISSIPPI MEADOWS, INC., Plaintiff-Appellee, *v*. GARY F. HODSON, Defendant-Appellant.

(No. 72-174; )

Third District—July 17, 1973.

Katz, McAndrews, Durkee & Telleen, of Rock Island, (John Telleen, of counsel,) for appellant.

Jackson & Douglas, of East Moline, (Marshall Douglas, of counsel,) for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Plaintiff-Appellee, Mississippi Meadows, Inc., brought this action against Gary Hodson, Defendant-Appellant, in the Circuit Court of Rock Island County to recover damages allegedly caused by the negligence of defendant. Plaintiff, a contractor who submitted the successful bid for construction of an eleven building apartment complex, entered into a contract with the owner of the real estate, Prince Hall Village, Inc., based on plans and specifications prepared by defendant. Under plaintiff's theory of the case, defendant's plans and specifications were followed; however, due to defendant's errors and omissions therein, plaintiff was required to make changes in the construction requiring materials and labor in addition to those originally contemplated, the expense of which plaintiff was required to bear.

Plaintiff's action was predicated on eleven claims of negligence; however, only three of these were submitted to the jury. The jury returned a verdict in favor of plaintiff for $30,000 upon which the trial court entered judgment. The three claims were based on a breach of defendant's duty to prepare plans conforming to existing topography and complying with existing building regulations. More specifically, it is alleged that defendant's "error in topography" required plaintiff to obtain extra fill and foundation extensions in order to comply with the city building codes and the defendant's plans failed to provide for steel plates in all headers on exterior walls requiring plaintiff to install plates to comply with city building codes.

The principal assignments of error on this appeal relate to the sufficiency of the evidence. Defendant's principal contention is the evidence is insufficient to raise a jury question or support the jury's verdict in accord with the *Pedrick* rule. Consequently, according to defendant, the trial court erred in refusing to direct a verdict in his favor and in failing to grant his motion for judgment notwithstanding the verdict.

According to paragraph 8(a) of the complaint, "Defendant's error in topography required plaintiff to obtain and place 2,132 cubic yards of fill dirt and 1,610 cubic yards of grandular sand mixture upon the con-

struction site in order to comply with City Building Regulations for frost lines." Paragraph 8(e) of the complaint alleges: "Defendant's error in topography required plaintiff to install foundation extensions on all buildings and change the exterior grades to comply with city building regulations for frost lines." These allegations of negligence are each based on the same claimed misconduct namely, the negligence of defendant Hodson in the preparation of the topography plans submitted to plaintiff, which were the basis of the contract for the construction project.

■■ An architect's efficiency in preparing plans and specifications is tested by the rule of ordinary and reasonable skill usually exercised by one in that profession. (See Annot., 25 A.L.R.2d 1088.) The duty of an architect depends upon the particular agreement he has entered with the person who employs him and in the absence of a special agreement he does not imply or guarantee a perfect plan or satisfactory result; rather, he is only liable if he fails to exercise reasonable care and skill. 5 Am.Jur.2d, Architects, Sec. 8.

In reviewing the complaint it should be noted plaintiff fails to describe the alleged error or in any way specify ultimate facts which constitute any particular error by defendant. Also, the complaint fails to specify the code or the section of a code involved or any duty set forth by a code which was allegedly violated by defendant's topographical plan. Not only do the allegations of negligence in the pleadings appear to be inadequate, but also the instructions given to the jury, which are worded similarly to the complaint, must have been confusing. Indeed it is difficult to understand how the jury could measure the defendant's conduct to determine the existence of negligence without being told what specific errors in topography allegedly were made by defendant or which building code or section thereof was allegedly violated.

Verbeke, a licensed surveyor testifying in behalf of defendant, described his activities in 1966 at which time he ascertained and laid out the boundaries and elevations of the area of the construction site. He prepared a survey of the area using as a reference point to determine elevations, the top of a fire hydrant located on the north line of the property. The top of the fire hydrant was the bench mark or reference point from which the relative elevations of various points on the property were ascertained. In the survey the bench mark was arbitrarily described as "100" and both contour lines and grid points were described in relation to the bench mark. On the survey grid points were designated at intervals of 100 feet. Contour lines were shown in one foot intervals designated with reference to the bench mark of "100", all points along each line being of the same elevation. There were contour lines indicating

elevations such as 100, 99, 98, 97 and 96. In describing the meaning of the contour lines, the witness indicated the area between lines gradually increased or decreased in elevation depending on whether the change in elevation was considered with reference to the smaller numbered line proceeding to the higher numbered line or in the reverse. Verbeke testified that he rechecked his survey in 1968 and it was the same as in 1966. Grid points were designated in fractional feet such as 96.94, and consequently did not necessarily appear on · the contour lines which were described in terms of whole numbered feet. This witness had examined the plans prepared by the defendant which were submitted to the plaintiff and testified the topography plan was substantially the same as his survey except the grid points were not included on the defendant's plan. He also referred briefly to a second page of the topography plans, referred to as a grading site improvement plan, which reflected the finished contour lines. Except for describing and interpreting the meaning of the points and lines on his own survey and indicating the defendant's plans did not include the grid points, this witness offered no testimony either on direct examination or cross examination concerning the significance or effect of failure to include the grid points and offered no testimony whether it was or was not necessary to include such points on the plan.

According to the plaintiff, because defendant did not include grid points, it was required to provide substantial amounts of dirt and sand for fill which it could not determine were required from the plans. Because of the additional sand and dirt fill the depth of the foundation had to be increased requiring more concrete and labor. Grading and excavation by a subcontractor of the plaintiff had been in progress for several weeks before plaintiff voiced its complaint that more fill would be required than it had expected. Consequently, a significant portion of the testimony concerned the peripheral issues of whether the subcontractor had removed part of the dirt and whether he had removed too much of the dirt. Such evidence had no significant bearing on the issue of defendant's misconduct and was more directly related to the question of damages on the assumption plaintiff might be entitled to a recovery.

The gist of plaintiff's claim is the topographical plan prepared and submitted by defendant was contrary to the actual topographical facts and defendant's error in the plan upon which the plaintiff relied caused plaintiff to be required to provide more fill than would have been the case had not the error occurred. Even if the grid points of the surveyor were not included in defendant's topographical plan, the question remains whether the defendant should have included such points. In other words, were such points necessary to enable the plaintiff or any other

contractor to determine how much fill, if any, was required? The question of necessity has a peculiar application in this case. If the grid point specifications were unnecessary, it would follow that the failure to include such points could not have proximately caused plaintiff's alleged damages and the failure of defendant to include such points could not support an inference of negligence. However, even if the specification of grid points was necessary to determine the amount of fill required, the question immediately arises as to how plaintiff could have or did determine the amount of fill required, if the plan did not contain the information which plaintiff now asserts is essential to such determination. The full import of these conclusions is demonstrated by the evidence. Initially, it should be noted there is no expert opinion regarding standards of conduct concerning the inclusion of grid points on the plan. Rather plaintiff sought to buttress its claim that extra fill is required merely on the failure to specify grid points without any evidence of cause and effect. Although there is substantial evidence of the amount of fill and concrete work which plaintiff provided, there is an entire failure of evidence regarding how much fill, if any, would be required based on the plan as submitted. Putting the matter another way, plaintiff has failed to show his calculations or estimates of the amount of fill which would be required were in any way adversely affected by the alleged error in the plans. Consequently, plaintiff's belief that more fill was required than it expected or more concrete required because of the additional fill cannot be considered the result of any error, misconduct or negligence on the part of defendant.

The other principal assignment of error on this appeal relates to paragraph 8(c) of the complaint, which is one of the claims submitted to the jury, wherein it is stated: "Defendant's plans and specifications failed to provide for steel plates in all headers on exterior walls bearing roof and floor loads and plaintiff was required to furnish material and labor to install said plates as required by city building codes." Again we point out an allegation which is vague as to defendant's wrongdoing and which fails to specify the code or the section of the code violated.

Two witnesses testified for the plaintiff regarding the charge relating to wall construction, Stauduhar, president of plaintiff company and Eggert, field foreman for plaintiff company. Also, defendant Hodson was called as an adverse witness under Sec. 60 of the Civil Practice Act and also he testified on his own behalf on this issue. For the defendant, Hawks, a structural engineer, and Rittenhouse, an employee of defendant, testified. From the testimony of these witnesses, it is undisputed the original plans and specifications provided for split level trusses which were the basis for the original contract. Plaintiff proposed a change to

full span trusses when it discovered there was a truck large enough to transport material to the construction site, even though substantial expense had been incurred in constructing the inside center wall. Defendant concurred with the change and plaintiff secured the change of the engineering design by Twin States Component Company, the company which pre-engineered the construction of all of the component framing. The original plan provided for two 2 x 6 headers over the first floor window openings and two 2 x 8 headers for the second floor window openings. The change provided for 2 x 10 headers with bolted steel on the first floor and 2 x 12 headers with bolted steel on the second floor. Plaintiff claims the difference between the price of the headers specified in the original plan and those actually installed was damage resulting from the negligence of defendant. We find no merit to the claim.

It seems to be plaintiff's contention that because the headers were changed from those originally specified in the plans and because such change was made with the knowledge of defendant, some inference of negligence is warranted. Since the change in headers was part of a change in spans resulting in a substantial increase of the load to be borne by the outside walls, the increase in size of headers has no tendency to show the headers as originally described were improper or of insufficient strength, when a part of the load was supported by a center wall.

Not even the "Code" referred to in the allegation offers any support for plaintiff's claim. At the close of plaintiff's evidence defendant's motion for directed verdict was argued and allowed on all allegations of negligence except the three discussed in this opinion. However, after the decision on the directed verdict motion, plaintiff was permitted to recall Stauduhar, president of plaintiff company, and he referred to a provision of the Uniform Building Code adopted by the City of Rock Island as its building code, which is claimed to be the basis of the negligence charged. The witness quoted sec. 2506B, Sub Paragraph 12 of the Code as follows:

> "* * * all openings 4 feet wide or less in bearing walls shall be provided with headers equivalent to double headers not less than 2 inches thick placed on edge securely fastened together and all openings more than 4 feet wide shall be trussed or provided with headers or lintels. Such headers or trusses shall have not less than 2 inches solid bearing at each end to the floor or bottom plate unless other approved framing or joint devices are used."

Although this is the provision of the Code apparently claimed to be violated, there is an entire absence of evidence that the headers originally

described violated this provision of the Code. On the contrary, the only evidence relates to compliance with the Code so far as the installed headers are concerned and the conclusion such headers were appropriate and required because of the loading on the walls. Such conclusion wholly ignores that increased wall loading resulted from the change in spans.

Hawks, the structural engineer, testified as an expert regarding the original plan and concluded that in his opinion the original plans were "acceptable". On cross examination in a welter of confusion, the witness suggested there was some discrepancy. in the plans but the nature of the discrepancy cannot be determined from his testimony or the exhibits and whatever the discrepancy, there was no effort made to show its relevance to a violation of duty of defendant. Nowhere in cross examination is there even an intimation that the headers installed by the plaintiff would have been required in the original plan. Without such showing no violation of the defendant's duty may be inferred. At best, the evidence on this subject indicates the heavier or more substantial header was an incident to the change in span design. While under proper circumstances such change might have justified additional charges from the owners if the owners had agreed thereto, it does not support a claim of misconduct by defendant.

■■ In our opinion, the evidence is insufficient as a matter of law to support the jury's verdict and the judgment entered thereon. It is therefore unnecessary to consider defendant's other assignments of error.

Accordingly, the judgment of the Circuit Court of Rock Island County is reversed.

Judgment reversed.

ALLOY, P. J., and DIXON, J., concur.