ALVIN TAAKE, Plaintiff-Appellant, v. WHGK, INC., *et al.*, Defendants-Appellees (American Air Filter, Defendant and Counterdefendant-Separate Appellee; WHGK, Inc., *et al.*, Counterplaintiffs and Third-Party Plaintiffs-Separate Appellants; Belleville Area College, Third-Party Defendant-Separate Appellee).

Fifth District   No. 5—90—0028

Opinion filed May 7, 1992.

HARRISON, J., concurring in part and dissenting in part.

Ducey, Feder & Ducey, Ltd., of Belleville, for appellant Alvin Taake.

John L. McMullin and T. Michael Ward, both of Brown & James, P.C., of Belleville and of St. Louis, Missouri, for appellee Fritz, Inc.

Harold A. Donovan and Charles L. Joley, both of Donovan, Rose, Nester & Szewczyk, P.C., of Belleville, for appellee Belleville Area College.

Dunham, Boman & Leskera, of East St. Louis (John W. Leskera, Russell W. Scott, and Edward L. Adelman, of counsel), for appellee American Air Filter.

Hinshaw & Culbertson, of Chicago (D. Kendall Griffith, William F. Kopis, and Terrence K. McGrath, of counsel), for WHGK, Inc., and Hellmuth, Obata, Kassabaum, Inc.

JUSTICE WELCH delivered the opinion of the court:

This appeal is brought by plaintiff, Alvin Taake, following a jury verdict rendered in the circuit court of St. Clair County in favor of defendants WHGK, Inc., Hellmuth, Obata, Kassabaum, Inc., and Fritz, Inc., in plaintiff's action to recover for personal injuries incurred as a result of the negligence of the defendants. Plaintiff's complaint, filed May 2, 1988, alleges as follows.

Count I, brought against defendant WHGK, Inc., which the record shows is an architectural firm, alleges that WHGK, Inc., was negligent in the design, selection, placement and approval of certain blower units and/or fan systems in the welding shop at Belleville Area College; that plaintiff was, on July 10, 1984, employed at Belleville Area College and that one of his duties was to service the aforementioned equipment and that, while attempting to replace a filter in said equipment, he sustained an injury to his right arm. Count II, brought against defendant Hellmuth, Obata, Kassabaum, Inc., which the record shows is an engineering firm, contains identical allegations as count I. Count V, brought against defendant, Fritz, Inc., which the record shows contracted to and did install the equipment at Belleville Area College, alleges that Fritz, Inc., was negligent in the installation. Count IV of the complaint was brought against Wil-Freds, Inc., the general contractor of the project, and was dismissed with prejudice on motion of plaintiff. Count III was brought against American Air Filter Company, Inc., the manufacturer of the equipment. The court directed a verdict against plaintiff and in favor of American Air Filter Company, Inc., on this count. Plaintiff does not appeal from this directed verdict.

Plaintiff alleges several trial errors upon which he seeks reversal of the judgment against him and a new trial. We find that plaintiff is indeed entitled to a new trial based on a reference to an expert previ-

ously retained by plaintiff but not disclosed as an expert witness under Supreme Court Rule 220 (134 Ill. 2d R. 220) made during opening statement by counsel for Fritz, Inc., the reading during opening statement by counsel for Fritz, Inc., of portions of that expert's previously taken discovery deposition, and the giving of an instruction allowing the jury to presume that, because plaintiff did not call this expert as a witness, the testimony of the expert would have been unfavorable to plaintiff. Some factual background is necessary to an understanding of our decision.

Plaintiff had originally filed a complaint against defendants based on the same cause of action in 1985. During the pendency of that action, plaintiff had disclosed one Rodney Schaefer as an expert witness pursuant to Supreme Court Rule 220 (134 Ill. 2d R. 220), and discovery depositions were taken of Schaefer. Plaintiff's complaint was subsequently voluntarily dismissed. Plaintiff filed the instant complaint in 1988.

On October 24, 1988, the trial court in the instant case entered an order requiring disclosure of all expert witnesses pursuant to Supreme Court Rule 220. (134 Ill. 2d R. 220.) Accordingly, on November 17, 1988, plaintiff disclosed as his expert witness one Louis J. Krueger. No other expert witness was listed by plaintiff.

On September 19, 1988, defendants filed motions asking that the previous discovery and evidence depositions taken under plaintiff's first complaint be applied to this case as if they had been taken in this lawsuit. As grounds for the motions, defendants alleged that numerous discovery and evidence depositions had been taken under the first complaint, including at least one evidence deposition of a witness who was now out of the country and whose whereabouts were unknown. Plaintiff filed an objection to the motion alleging that the only evidence deposition taken was of plaintiff's witness Al Jorns, plaintiff's supervisor at the time of his injury. Plaintiff's objection set forth Jorns' current address in Belleville and argued that, because of the availability of Jorns, his evidence deposition could not be used. Defendants filed a reply to plaintiff's objection stating that it is the deposition of Jorns which is the source of contention between the parties, that plaintiff does not want the deposition in evidence because it is unfavorable to plaintiff, that if Jorns is available for testimony at trial the deposition would not be used, but that if he is unavailable the previous deposition should be admissible and a new evidence deposition should not be required. On October 24, 1988, the court entered an order that defendants' "motion to have prior discovery etc. in 85—L—50 — allowed."

The gist of plaintiff's cause of action is that certain air purifiers were installed in the newly constructed welding shop at Belleville Area College. It was one of plaintiff's job duties to remove and clean the filters in these purifiers. The manufacturer of the purifiers recommended that the units be placed with a minimum clearance of four feet to allow removal of the filters and required a catwalk if the units were suspended from the ceiling. Plaintiff alleged that the units were installed with less than four feet clearance and without a catwalk, requiring use of a movable scaffold, and that he was injured while replacing a filter as a result of the negligent design, selection and installation of the air purifiers.

During opening statement by counsel for Fritz, Inc., the installer of the air purifiers, the following occurred. After stating that Fritz, Inc., had been forced by the design of the building to install the units in a small space, counsel stated:

"The evidence will be that there is nothing wrong with that. There is nothing unsafe about that. And it did not cause the accident. As a matter of fact, they got another expert named Rodney Schaefer, the plaintiff—

MR. FEDER: Your Honor, I am going to object to that.

THE COURT: What is the objection?

MR. FEDER: Well, he is talking about my case, not what he hopes to prove.

THE COURT: It is not about whose case is whose. It is what the evidence is going to show. He is making a statement as to what the evidence is going to be.

(Mr. McMullin continuing) Anyway, they hired this one expert named Rodney Schaefer. 125 Bucks an hour. This is what Rodney Schaefer told us in his deposition. I assume he will testify the same way when Mr. Feder brings him into the courthouse.

He will say, 'Well I couldn't say this accident wouldn't have happened if there was four foot. I couldn't say this wouldn't have happened if this thing was out in the middle of Busch Stadium.'

He says, 'The book that I rely on on safety, as to how much space you need to have,' and he mentions right in his report, the book that he relies on, the definitive, authoritative text on safety, as to how much space you have.

Guess how much space they say[,] clearance[,] you need. How much clearance? Two inches. This had five times that. Their own expert."

At the conclusion of opening statements, plaintiff moved for a mistrial based on the above opening statement. Plaintiff argued that Rodney Schaefer had not been disclosed as an expert in this litigation and that counsel's statements had so prejudiced the jury against plaintiff that a mistrial was warranted. Counsel for Fritz, Inc., argued in response that it was his understanding that all previous discovery from the first case had been adopted for the instant case, including the disclosure of Rodney Schaefer as an expert witness. Plaintiff had never withdrawn Schaefer as his expert witness.

The court ruled that Rodney Schaefer was named as one of plaintiff's expert witnesses as all discovery from the previously filed lawsuit had been adopted for the instant lawsuit. Plaintiff's motion for mistrial was denied.

■ We think the trial court erred in denying plaintiff's motion for mistrial. We disagree with the trial court's finding that Rodney Schaefer was named as one of plaintiff's expert witnesses in the instant lawsuit. The motions of defendants to have prior discovery and evidence depositions apply in the case at bar sought only to avoid the filing of duplicitous interrogatories and other discovery responses and the taking of repetitive depositions of individuals who would be witnesses in the instant case by having those discovery responses already filed and those depositions already taken available for use in the instant lawsuit. That this is so is evident from the motions, the objection of plaintiff and the reply of defendant, which address specifically the evidence deposition of Al Jorns. We do not think any reasonable interpretation of defendants' motions or the trial court's order based thereon would include all discovery filed in the previous lawsuit, including plaintiff's disclosure of an expert witness pursuant to Rule 220. That this is so is further demonstrated by the trial court's entry of new orders pursuant to Rule 220 setting time limits for disclosing expert witnesses. These orders were not supplementary orders but were initial Rule 220 orders. We think the only disclosure of expert witnesses made by plaintiff in the instant lawsuit is that made of Louis J. Krueger on November 17, 1988.

Opening statement is intended generally to inform the jurors concerning the nature of the action and the issues involved and to give them an outline of the case so that they can better understand the testimony. (*Gillson v. Gulf, Mobile & Ohio R.R. Co.* (1969), 42 Ill. 2d 193, 196-97, 246 N.E.2d 269, 272.) Counsel may summarily outline what he expects the evidence admissible at the trial will show, but no statement may be made in opening statement which counsel does not

intend to prove or cannot prove. *Gillson,* 42 Ill. 2d at 197, 246 N.E.2d at 272.

The general rule as to statements made by counsel in his opening statement to the jury that certain evidence will be introduced is that such statements are not improper if made in good faith and with reasonable ground to believe that the evidence is admissible, even though the intended proof referred to is afterwards excluded. (*Schwedler v. Galvan* (1977), 46 Ill. App. 3d 630, 640, 360 N.E.2d 1324, 1331.) However, in the absence of good faith, or where prejudice is clearly produced, whether as the result of accident, inadvertence or misconception, the rule is to the contrary. (*Schwedler,* 46 Ill. App. 3d at 640, 360 N.E.2d at 1331.) In the instant case, as in *Schwedler,* we think the presentation of facts to the jury through means of opening statement, which defendant Fritz, Inc., could not or did not prove, was clearly prejudicial to the plaintiff and deprived him of the fair trial to which he was entitled.

While the trial court admonished the jury before commencement of opening statements that the opening statements were not evidence and later instructed it generally to that effect, under the circumstances here we do not believe this can cure the obviously improper and prejudicial effect the remarks here may have had upon the jury. The remarks of counsel, once lodged in the minds of the jury, could not be erased by an instruction, and allowing the trial to continue permitted defendant to secure the benefit of his statement to the same extent as if he had introduced evidence to prove it. See *Sawicki v. Kim* (1983), 112 Ill. App. 3d 641, 646, 445 N.E.2d 63, 66.

The remarks of counsel for Fritz, Inc., are of themselves sufficiently prejudicial for us to reverse and to remand for a new trial because of the trial court's abuse of discretion in not granting a mistrial. However, the prejudicial effect of this error was compounded further by subsequent proceedings in the trial.

■■ At the beginning of its case, defendant Fritz, Inc., read to the jury the Rule 220 disclosure plaintiff had made in the original lawsuit listing Rodney Schaefer as his expert witness and stating that plaintiff might call Schaefer as an expert witness at trial. Defendants also tendered a jury instruction, Illinois Pattern Jury Instruction, Civil, No. 5.01 (3d ed. 1991), the missing-witness instruction, arguing that Rodney Schaefer had been listed as an expert witness by plaintiff but that plaintiff had failed to produce him. Plaintiff objected to the giving of this instruction for the same reasons he had objected to the opening statement of Fritz, Inc. Over plaintiff's objection the instruction was given to the jury as follows:

"If a party to this case has failed to offer evidence, or to produce a witness within his power to produce, you may infer that the evidence or testimony of the witness would be adverse to that party if you believe each of the following elements:

1. The evidence or witness was under the control of the party and could have been produced by the exercise of reasonable diligence.

2. The evidence and witness was [sic] not equally available to an adverse party.

3. A reasonably prudent person under the same or similar circumstances would have offered the evidence or produced the witness if he believed it to be or the testimony would be favorable to him.

4. No reasonable excuse for the failure has been shown."

The giving of this instruction by the trial court was error which, when considered with the opening statement of Fritz, Inc., prejudiced plaintiff's case and deprived him of a fair trial.

We have already held that Rodney Schaefer was not listed as an expert witness by plaintiff in the instant case. Because Schaefer was not listed as plaintiff's expert, he was not under the control of plaintiff and was equally available to defendants. (*Ciborowski v. Philip Dressler & Associates* (1982), 110 Ill. App. 3d 981, 986, 443 N.E.2d 618, 622.) The instruction should not be given where the missing witness is equally available to both parties. *Flynn v. Cusentino* (1978), 59 Ill. App. 3d 262, 267, 375 N.E.2d 433, 436.

We find this case to be distinguishable from *Bargman v. Economics Laboratory, Inc.* (1989), 181 Ill. App. 3d 1023, 537 N.E.2d 938. In *Bargman*, defendant had identified Jack Pastore as an expert witness prior to the first trial but did not call him at trial. Upon retrial, defendant did not list Pastore as an expert witness but listed a different expert. Pastore was not called as a witness by either party at the second trial.

At the second trial, a stipulation was read to the jury that defendant had retained Pastore as an expert witness but had failed to call him. However, the trial court refused to give the missing-witness instruction. Plaintiff appealed this refusal.

On appeal, defendant argued that it had withdrawn Pastore as an expert witness prior to the second trial in that Pastore was not listed as an expert under Rule 220 in the second trial. The appellate court held that defendant had not abandoned Pastore as an expert witness because, although Pastore was not listed as an expert before the second trial, up to that point he had been considered one of defendant's ex-

perts. Because plaintiff was required to disclose its experts first, without knowing whom defendant would disclose, plaintiff was not able to take advantage of defendant's abandonment of Pastore by listing him as its own expert witness. Furthermore, the court found, the stipulation entered into by the parties and read to the jury verified that Pastore was under the control of defendant as defendant's expert witness. Thus, the missing-witness instruction should have been given.

In the instant case, plaintiff did not list Rodney Schaefer as an expert witness on his Rule 220 disclosure in the instant case. Defendants therefore knew before they were required to disclose their experts that Schaefer would not be one of plaintiff's expert witnesses. Thus, Schaefer was available to defendants and could have been retained by defendants as an expert and listed as an expert witness on their Rule 220 disclosure. Furthermore, there is no stipulation in the instant case in which plaintiff concedes that Schaefer had been retained as an expert witness in the instant case. To the contrary, plaintiff has consistently maintained that Schaefer was never intended to be his expert witness in the instant lawsuit.

Defendant Fritz, Inc., argues that plaintiff waived any error with respect to opening statement because both his objection at trial and his post-trial motion were not sufficiently specific to apprise the trial court of the error which he claimed. Plaintiff's post-trial motion alleged that the trial court erred when it denied plaintiff's motion for a mistrial because of remarks made by counsel for Fritz, Inc., in opening statement. We think that, in light of the lengthy argument and discussion held on plaintiff's motion for mistrial following opening argument, the trial court was well aware of the basis of plaintiff's claim of error. Plaintiff's objection at trial and his post-trial motion, in light of his motion for mistrial, were sufficient to apprise the trial court of plaintiff's claim of error.

Defendants WHGK, Inc., and Hellmuth, Obata, Kassabaum, Inc., argue that plaintiff has waived any error with respect to the missing-witness instruction because he did not raise the specific arguments before the trial court which he raises now on appeal. Defendant is correct that a party must raise specific grounds for his objections to instructions at the instruction conference or his objection is waived. (*Frankenthal v. Grand Trunk Western R.R. Co.* (1983), 120 Ill. App. 3d 409, 414, 458 N.E.2d 530, 535.) However, the purpose of the objection is to apprise the trial court of the alleged error so that the court may make an informed decision and correct any error. (*Gilman v. Lee* (1959), 23 Ill. App. 2d 61, 68, 161 N.E.2d 586, 590.) Plaintiff's objection in the instant case was sufficient to apprise the trial court that

the basis of the objection was that Rodney Schaeffer had not been disclosed as plaintiff's expert and was therefore not under plaintiff's control.

In our opinion, these errors deprived plaintiff of a fair trial and necessitate remandment for a new trial. Plaintiff raises several other claims of error which we will discuss because they might arise on retrial.

Plaintiff claims error in the exclusion of certain testimony of Leroy Dawson. Dawson, an architect, had been employed by defendant WHGK, Inc., as an on-site observer at the Belleville Area College construction project. He began work there in 1978 but voluntarily left the project prior to August 1980 when the air purifiers in question were installed. His duties as on-site observer were to follow the construction and assure the architects that the construction documents, the plans and specifications, were followed.

During the course of his examination of Dawson, plaintiff attempted to question Dawson about the duties and responsibilities generally of an on-site observer or architect's project representative. Defendants WHGK, Inc., and Hellmuth, Obata, Kassabaum, Inc., objected on the ground that Dawson had not been disclosed by plaintiff as an expert witness pursuant to Supreme Court Rule 220, and that plaintiff was asking Dawson for an expert opinion. Plaintiff also inquired of Dawson what role shop drawings play in the construction and whether an on-site observer is to ensure compliance with the shop drawings. Defendants WHGK, Inc., and Hellmuth, Obata, Kassabaum, Inc., again objected on the ground that plaintiff was asking general questions of the witness rather than questions relating to the specific job on which the witness worked. The objections of defendant were sustained by the trial court.

On appeal, plaintiff argues that Dawson was not an expert witness within the meaning of Rule 220(b)(1), which bars testimony of expert witnesses not disclosed in accordance with the rule, and therefore the trial court erred in excluding the opinion testimony of Dawson. We agree.

Supreme Court Rule 220(b)(1) requires the disclosure of any "expert who is retained to render an opinion at trial on behalf of a party." (134 Ill. 2d R. 220(b)(1).) In *Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 529 N.E.2d 525, our supreme court held that a treating physician who testifies to a medical opinion at trial does not constitute an "expert witness" within the meaning of Rule 220(b)(1) such that disclosure of his identity as an expert is required. Rule 220 only obliges litigants to disclose the identity and

opinions of those witnesses who are retained for the purpose of giving an expert opinion at trial. The opinion of a treating physician is not formed in anticipation of a trial but as the product of the physician's observations while treating the patient. Finally, the court pointed out that there is no reason why a party should be surprised by the medical testimony of a treating physician at trial as his identity is discoverable under other supreme court rules.

Following *Tzystuck*, numerous decisions have held that witnesses who are not retained for the purpose of giving an expert opinion at trial may render expert opinions without having been disclosed under Rule 220. *DeYoung v. Alpha Construction Co.* (1989), 186 Ill. App. 3d 758, 542 N.E.2d 859 (fire marshal testified to origin of explosion); *Hill v. Ben Franklin Savings & Loan Association* (1988), 177 Ill. App. 3d 51, 531 N.E.2d 1089 (landowner testified to value of land).

In *Smith v. Central Illinois Public Service Co.* (1988), 176 Ill. App. 3d 482, 531 N.E.2d 51, an employee of the defendant, an architectural and engineering firm, testified for the defendant. Over objection of plaintiff, the witness, a licensed engineer, was allowed to testify that the construction in question was designed in the safest manner and complied with all professional standards. Plaintiff argued on appeal that this testimony was improper because the witness had not been disclosed pursuant to Rule 220.

Relying on *Tzystuck*, the *Smith* court held that the opinion testimony was properly admitted. The fact that the witness testified was no surprise to plaintiff because the witness was known by plaintiff to have been in charge of the construction project. Only the fact that he gave an expert opinion surprised plaintiff. Furthermore, the expert was not retained as an expert but testified because he was intimately involved in the project as an occurrence witness, long before any litigation was contemplated. The court held that a party, or an employee of a party, who is intimately involved in the subject matter of the litigation need not be disclosed as an expert witness pursuant to Rule 220(b)(1).

In *Voyles v. Sanford* (1989), 183 Ill. App. 3d 833, 539 N.E.2d 801, the appellate court found error in the trial court's striking of portions of a witness' testimony. The witness had been an employee of the defendant at the time the cause of action arose but was no longer an employee at the time of trial. Plaintiff sought to introduce testimony of the witness expressing an opinion on a tractor/trailer braking system. The witness was an experienced semi driver, and a sufficient foundation was established for his rendering an expert opinion as to the proper use of the braking system. The trial court excluded the

testimony on the ground that the witness had not been disclosed as an expert witness pursuant to Rule 220.

In remanding the cause for a new trial, the appellate court held that the witness need not have been disclosed under Rule 220. The witness had been an employee of defendant at the time the cause of action arose, he had been intimately involved in the matter being litigated, he was not retained as an expert for the purpose of litigation, he was known as an experienced driver long before trial, and he was equally available to all parties for purposes of discovering his testimony. Plaintiffs were not required to provide defendant with disclosure pursuant to Rule 220.

■■ We think the instant case is similar to *Smith* and *Voyles*. Dawson had been an employee of defendant WHGK, Inc., during the construction project and was therefore known to defendant. Defendant was not surprised that Dawson was a witness but only that he was asked to render an expert opinion. Dawson had been intimately involved in the construction project as an on-site observer. He was not retained as an expert for the purpose of litigation but testified essentially as an occurrence witness. Finally, he was not under the control of plaintiff but was equally available to all parties for purposes of discovering his testimony. Plaintiff was not required to disclose Dawson as an expert witness pursuant to Supreme Court Rule 220(b)(1), and the trial court erred in excluding his testimony.

Relying on *Altszyler v. Horizon House Condominium Association* (1988), 175 Ill. App. 3d 93, 100, 529 N.E.2d 704, 710, defendants argue that, where the witness is not testifying as an expert, any opinion testimony is limited to that which can be rationally based upon the perception of the witness and would be helpful to a clear understanding of the witness' testimony or the determination of a fact in issue. Defendants argue that, because Dawson was not testifying as an expert witness, he could not render opinions on matters which were not based upon his own perceptions. Defendants' statement of the law is correct. However, defendants misapprehend the distinction between an expert witness who must be disclosed under Rule 220 and a witness who need not be disclosed but is qualified as an expert and may render an expert opinion.

Rule 220 governs only those expert witnesses whose relationship with the party arose solely because the party retained the witness to render an opinion at trial. It is the witness' relationship to the case, not the substance of his testimony, which qualifies him as a Rule 220 expert. *Dugan v. Weber* (1988), 175 Ill. App. 3d 1088, 1093, 530 N.E.2d 1007, 1010.

In the instant case, as in *Voyles*, sufficient foundation was established to qualify Dawson as an expert on the job duties and responsibilities of an on-site observer. He could, therefore, render an expert opinion on that subject. Because he was not retained for the purpose of rendering that expert opinion but was otherwise connected to the litigation, he was not required to be disclosed to defendants as an expert witness.

■ Finally, defendant Fritz, Inc., argues that plaintiff has waived any error in the exclusion of Dawson's testimony by his failure to make an offer of proof as to the substance of that testimony. An offer of proof is not always necessary to preserve an issue for appeal, and in the instant case it was not. (*Ashe v. Sunshine Broadcasting Corp.* (1980), 90 Ill. App. 3d 97, 99, 412 N.E.2d 1142, 1144-45.) An offer of proof would have been helpful, and even necessary, in the instant case for us to assess any prejudice which might have resulted to plaintiff from the error. However, because we have already found sufficient prejudicial error to reverse and remand this cause, and we address this issue only for the purpose of guidance on retrial, we need not reach the question of whether the exclusion of Dawson's testimony prejudiced plaintiff.

Plaintiff's next claim of error is that the trial court erred in granting the motion *in limine* of defendants WHGK, Inc., and Hellmuth, Obata, Kassabaum, Inc., to exclude evidence concerning a postaccident change in the location of the air purifiers. Subsequent to plaintiff's injury, the air purifier units were moved outside the building and located on the roof. At the hearing on defendants' motion *in limine*, plaintiff argued that he should be allowed to admit evidence of this postaccident change to rebut the defendants' defense that they could not locate the units anywhere other than where they were when plaintiff was injured and therefore they were not negligent. The court ruled that plaintiff could not submit evidence of the postaccident change in his direct case, but if defendants presented evidence in defense that they could not have located the units elsewhere and therefore were not negligent, plaintiff could introduce evidence of the postaccident change in location in his rebuttal case. Plaintiff did not offer any evidence in rebuttal.

■ We find no error in the trial court's ruling. As a general rule, evidence of postaccident remedial measures is not admissible to prove defendant's negligence. (*Schaffner v. Chicago & North Western Transportation Co.* (1989), 129 Ill. 2d 1, 14, 541 N.E.2d 643, 647.) Such evidence may, however, be used for other purposes, such as for proving ownership or feasibility of precautionary measures, where contro-

verted, or for impeachment. (*Lubbers v. Norfolk & Western Ry. Co.* (1986), 147 Ill. App. 3d 501, 515, 498 N.E.2d 357, 367; *Schaffner*, 129 Ill. 2d at 14, 541 N.E.2d at 649.) Plaintiff here was given the opportunity to introduce evidence of postaccident changes in his rebuttal case in the event defendants presented evidence that precautionary measures, such as alternate locations, were not feasible. Whether or not to grant a motion *in limine* is within the sound discretion of the trial court. (*Madison Associates v. Bass* (1987), 158 Ill. App. 3d 526, 540-41, 511 N.E.2d 690, 700.) The trial court did not abuse its discretion in refusing to allow plaintiff to introduce evidence of postaccident changes in his case in chief, for such evidence is not admissible to prove defendants' negligence. Plaintiff was allowed to introduce such evidence to controvert defendants' case, if necessary, but declined to do so. The trial court's ruling was proper.

■ Plaintiff's next claim of error is that the trial court erred in denying plaintiff's motion for a new trial based on the improper, prejudicial and inflammatory closing argument of counsel for defendant, Fritz, Inc. Without implying any judgment as to the propriety of counsel's closing argument, we simply decline to address this argument for, although this cause must be remanded for a new trial, we do not think it likely that counsel's allegedly prejudicial closing argument will be repeated at retrial.

Plaintiff's final claim of error relates to a jury instruction, tendered by defendants WHGK, Inc., and Hellmuth, Obata, Kassabaum, Inc., which, as read to the jury, stated as follows:

"In performing services, an architect must possess and apply the knowledge and use the skill and care that is ordinarily used by reasonably well-qualified architects. A failure to do so is a form of negligence that is called malpractice.

The only way in which you may decide whether the defendant architects possessed and applied the knowledge, and used the skill and care which the law required of them, is from evidence presented in this trial by architects called as expert witnesses. You must not attempt to determine this question from any personal knowledge you have."

Plaintiff objected at trial to the giving of the second paragraph of this instruction, arguing that it is not necessary to have an expert testify as to negligence where there are contract documents which have been violated. In the instant case, the contract documents set forth the duties and responsibilities of the architect and, plaintiff argued, he had presented sufficient evidence that the architect had breached those duties. Plaintiff argued that an expert witness was not required to

tell the jury whether the architect had breached its duties under the contract. The trial court gave the instruction over plaintiff's objection. On appeal, plaintiff argues that the trial court erred in reading the second paragraph of the instruction to the jury.

The instruction given is Illinois Pattern Jury Instruction, Civil, No. 105.01 (2d ed. 1971). While this instruction originally applied only to health care workers, it has been expanded to apply to all cases of professional negligence or malpractice. (Illinois Pattern Jury Instructions, Civil, Introduction to 105.00 series, at 105-5 (3d ed. 1992).) The notes following the second edition of this instruction provide that the second paragraph is to be used only when the breach of duty complained of is not a matter of common knowledge. (Illinois Pattern Jury Instructions, Civil, No. 105.01, Notes on Use, at 319 (2d ed. 1971).) The comment following that instruction explains that, generally, expert testimony is needed to support a charge of malpractice because jurors would have difficulty, without the help of medical evidence, in determining any lack of necessary scientific skill on the part of the physician. However, the result of the treatment may be of such character as to warrant the inference of negligence from the testimony of laymen or in the light of experience of the jurors themselves. Illinois Pattern Jury Instructions, Civil, No. 105.01, Comment, at 321 (2d ed. 1971).

The introduction to the third edition of Illinois Pattern Jury Instructions, Civil, 105.00 series, states that, because the same general standard of care applies to all professionals, instruction No. 105.01, with modifications, may be used regardless of the defendant's profession. (Illinois Pattern Jury Instructions, Civil, No. 105.01, at 105-4 to 105-5 (3d ed. 1992).) The notes following the third edition of this instruction state that the second paragraph must be given unless the court determines that expert testimony is not necessary because the case falls within the "common knowledge" exception. Illinois Pattern Jury Instructions, Civil, No. 105.01, Notes on Use, at 105-6 (3d ed. 1992).

In *Rosos Litho Supply Corp. v. Hansen* (1984), 123 Ill. App. 3d 290, 299, 462 N.E.2d 566, 573, the court recognized that Illinois decisions have held that an architect's tort duty can be defined by reference to his particular employment agreement. (Citing *Bates & Rogers Construction Corp. v. North Shore Sanitary District* (1980), 92 Ill. App. 3d 90, 414 N.E.2d 1274; *Mississippi Meadows, Inc. v. Hodson* (1973), 13 Ill. App. 3d 24, 299 N.E.2d 359.) Thus, duty and breach of that duty may be inferred from the defendant's own testimony. See *Hansen*, 123 Ill. App. 3d at 299, 462 N.E.2d at 573-74.

In *Fence Rail Development Corp. v. Nelson & Associates, Ltd.* (1988), 174 Ill. App. 3d 94, 98, 528 N.E.2d 344, 347, the court recognized that where professional negligence is so grossly apparent that a layman would have no difficulty in appraising it, as where the record discloses such an obvious, explicit and undisputed breach of duty, expert testimony would not be required. The court stated that "usually" or "generally" the architect's conduct must be measured by a standard established by expert testimony but not "always."

■■ The question then, in the instant case, is whether the trial court correctly determined that expert testimony was necessary because the case did not fall within the "common knowledge" exception, that is whether negligence was established through evidence of a breach of defendants' duties under their employment contract, or whether the negligence was so grossly apparent that a layman would have no difficulty in appraising it.

We need not decide this question for purposes of this case, as we have already determined that the cause must be remanded for retrial. We set forth our comments with respect to the issue only for guidance in the event this question arises on retrial. The evidence on retrial may or may not be the same, and any further resolution of this issue based on the evidence now before us will not help the trial court.

In conclusion, then, we find that plaintiff was prejudiced by the trial court's erroneous denial of his motion for mistrial following the opening statement of counsel for Fritz, Inc., and the giving of the "missing witness" instruction. Accordingly, we reverse the judgment of the trial court against plaintiff and in favor of defendants and remand this cause for a new trial.

In light of our reversal of the judgment in favor of defendants, we must now address the appeal of defendants/counterplaintiffs/third-party plaintiffs WHGK, Inc., and Hellmuth, Obata, Kassabaum, Inc., from the granting of motions for directed verdicts in favor of third-party defendants Belleville Area College and American Air Filter Company, Inc. On August 23, 1988, third-party plaintiffs filed a complaint against third-party defendants seeking contribution as joint tortfeasors in the event third-party plaintiffs were found liable on plaintiff's complaint. Count I of the third-party complaint, directed against Belleville Area College, alleged that the college was plaintiff's employer at the time of plaintiff's injury, that the college had a duty to provide plaintiff with a safe place to work and to exercise due care for his safety, and that the college breached that duty by failing to properly instruct and train plaintiff in the safety procedures to be used in servicing and maintaining the air purifiers, failing to properly

supervise plaintiff in the manner in which he serviced and maintained the air purifiers, and failing to repair or notify the appropriate persons that the air purifiers were not working properly. This count was later amended to allege also that the college breached its duty to plaintiff in failing to notify the defendants/third-party plaintiffs when it knew or should have known that the air purifier had not been installed with adequate space for servicing, in failing to provide a safe place for plaintiff to work, and in failing to take proper action to protect plaintiff from an unsafe condition in the work place when it knew or should have known of same.

Count III of the third-party complaint was directed against American Air Filter Company, Inc. (hereinafter AAF), and alleges that AAF was the manufacturer of the air purifiers, that AAF owed a duty to plaintiff to inspect the installation of the air purifiers to assure that they were installed according to the recommendations of AAF, and that AAF breached this duty by failing to inspect the installation or by performing the inspection negligently in that it failed to ascertain that the air purifiers were not installed according to its own recommendations. This count was later amended to include the allegation that AAF was negligent in failing to notify the defendants/third-party plaintiffs that the air purifier had not been installed in accordance with the recommendations of AAF when it knew or should have known of the faulty installation and had assumed the duty to make such notification.

On July 25, 1989, third-party defendants filed motions for directed verdicts at the close of all the evidence. These motions were granted by the trial court. Third-party plaintiffs appeal. We affirm.

A directed verdict is properly granted only when all the evidence, viewed in the light most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) This standard was met in the instant case.

Third-party plaintiffs allege that Belleville Area College breached its duty to plaintiff in the following respects:

    a. it failed to properly instruct its employees in the safety procedures to be used when servicing and maintaining the air purifier units;

    b. it failed to properly train its employees in the safety procedures to be used when servicing and maintaining the air purifier units;

c. it failed to properly supervise the manner in which its employees serviced and maintained the air purifier units;

d. it failed to repair or notify the appropriate persons that the air purifiers were not working properly;

e. it failed to provide a safe place to work; and

f. it failed to take proper action to protect plaintiff from an unsafe condition when it knew or should have known of same.

With respect to the first three allegations of negligence, failure to properly instruct, train and supervise employees in the safe servicing and maintenance of the air purifiers, we find that, even assuming Belleville Area College breached a duty of care to plaintiff in these ways, the third-party plaintiffs failed to present any evidence to show that the breach was a proximate cause of plaintiff's injury.

In any negligence action, plaintiff bears the burden of proving not only a duty and breach of duty but also that the breach of that duty was the proximate cause of plaintiff's injury. (*Steiner v. Marr* (1988), 171 Ill. App. 3d 366, 369, 525 N.E.2d 556, 558.) Third-party plaintiffs have totally failed to do so in the instant case.

Proximate cause can only be established when there is a reasonable certainty that defendant's acts caused the injury. (*Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813, 817, 416 N.E.2d 328, 331.) No liability can exist unless the defendant's alleged negligence is the legal cause of the plaintiff's injury. (*Kimbrough*, 92 Ill. App. 3d at 817, 416 N.E.2d at 331.) Where a plaintiff has not established the element of proximate cause, a directed verdict in favor of defendant is proper. *Kimbrough*, 92 Ill. App. 3d at 817, 416 N.E.2d at 331.

■ In the instant case, the only evidence in the record as to the cause of plaintiff's injury is that the space allowed for removing and replacing the filter in the air purifier was insufficient, requiring plaintiff to use excessive force, thereby tearing his biceps muscle. Because of the lack of sufficient clearance, plaintiff was forced to replace the filter at an angle and "jimmy" it into the purifier bit by bit. When the filter became wedged at an angle in the purifier, plaintiff was required to use extra force to move the filter. In doing so, he injured his arm.

The third-party plaintiffs presented no evidence that there was an alternate or safer way for plaintiff to replace the filter in the air purifier or that had the college instructed, trained or supervised plaintiff in the use of this proper or safer method of replacing the filter plaintiff would not have been injured. There is no evidence in the record that the failure of the college to properly instruct, train or supervise its employees contributed in any way to plaintiff's accident.

The evidence on the issue of Belleville Area College's negligence did not establish any relationship between the instruction, training and supervision of plaintiff and the proximate cause of the plaintiff's accident. Absent proof of a causal relationship between the college's alleged failure to properly instruct, train and supervise plaintiff and the plaintiff's accident and injury, third-party plaintiffs have failed to establish the element of proximate cause.

Furthermore, the evidence indicates that, in fact, plaintiff was instructed, trained and supervised in the servicing and maintenance of the air purifiers. Accordingly, the trial court properly entered a directed verdict for Belleville Area College on these allegations of negligence.

The third-party complaint also alleges that Belleville Area College was negligent in failing to provide plaintiff with a safe place to work. In their brief, third-party plaintiffs argue that plaintiff's workplace was unsafe because he had insufficient space in which to remove the filters from the air purifier.

While an employer is not a guarantor of the safety of its employees, an employer does have a duty to provide its employees with a reasonably safe place in which to work. (*Coselman v. Schleifer* (1968), 97 Ill. App. 2d 123, 126, 239 N.E.2d 687, 689.) The employer must use reasonable care to provide for the safety of its employees. (*Coselman*, 97 Ill. App. 2d at 127, 239 N.E.2d at 689.) Put another way, an employer has a duty to use ordinary care to provide its employees with a reasonably safe workplace. *Dickey v. Commonwealth Edison Co.* (1986), 149 Ill. App. 3d 242, 244, 500 N.E.2d 697, 698.

The question of whether a duty exists in a particular case and the scope or range of protection of such duty are questions of law. (*Gamlin v. Biegler* (1984), 128 Ill. App. 3d 433, 435, 470 N.E.2d 1040, 1042.) The determination of whether a duty exists, and the scope of that duty, depends not only on the foreseeability of harm, but also on such policy considerations as the magnitude of the risk involved, the burden of requiring the employer to guard against that risk, and the consequences of placing that burden on the employer. *Gamlin*, 128 Ill. App. 3d at 435, 470 N.E.2d at 1042.

In the instant case, there is no evidence that the college was even aware that the insufficient clearance made it dangerous for its employees to remove and replace the filters in the air purifier. Furthermore, the evidence clearly shows that Belleville Area College had no input into the construction of the welding shop or the placement of the air purifiers. The construction was contracted and paid for by the Capital Development Board, a State agency which oversees all State

construction. During the construction phase, the Capital Development Board was the owner of the welding shop, and the building was not turned over to Belleville Area College until after the construction was completed. Even had the college known of the insufficient clearance during the construction phase, it could have done nothing to remedy the problem. Again, after the completion of construction, when the welding shop was turned over to the college, the college had no way in which to remedy the problem with the air purifiers. Belleville Area College took the building as it was constructed. The burden of requiring the college to guard against any risk from the insufficient clearance would have been overwhelming to the college, and the consequence of placing that burden upon the college would have been to force the college to abandon the welding shop. We find, therefore, that the injury suffered by plaintiff falls outside the scope of duty of the college, as an employer, to furnish its employees with a reasonably safe place to work.

Analyzed another way, we find that third-party plaintiffs in the instant case presented no evidence that Belleville Area College breached its duty to use ordinary care to provide plaintiff with a reasonably safe workplace. There is no evidence the college was aware that the insufficient clearance created an unsafe condition. Furthermore, the college had no reasonable solution to the problem of insufficient clearance. The evidence shows that the college did exercise ordinary care to furnish plaintiff with a reasonably safe place to work.

Third-party plaintiffs' final allegation of negligence against Belleville Area College is that the college failed to take proper action to protect plaintiff from an unsafe work condition when it knew or should have known of that unsafe condition. Third-party plaintiffs argue that Belleville Area College knew of the unsafe condition because plaintiff's supervisor, Al Jorns, testified that he repeatedly complained to his supervisor that there were maintenance problems with the air purifiers and repeatedly asked his supervisor for maintenance literature on the air purifiers. Third-party plaintiffs assert that Jorns' supervisor never provided that maintenance literature. Third-party plaintiffs argue that this supports their allegation that Belleville Area College failed to take proper action to protect plaintiff from an unsafe work condition after it knew of the condition.

■ The record does not support third-party plaintiffs' argument. Neither Jorns nor plaintiff ever complained to their supervisors that servicing and maintaining the air purifiers was unsafe or dangerous. Jorns did tell his supervisor that cleaning the purifiers took too many man hours, presumably because it was difficult. Jorns also asked his

supervisor for maintenance literature on the air purifiers and was provided with that literature in April 1983, more than one year prior to plaintiff's accident. Thus, while Belleville Area College may have known that cleaning the air purifiers was difficult and time consuming, there is no evidence it knew, or should have known, that the work was unsafe or dangerous. Furthermore, the college did provide its employees with the maintenance literature on the air purifiers. Third-party plaintiffs presented no evidence of any other actions which the college should have taken to protect its employees from the allegedly unsafe condition. The college breached no duty of ordinary care to plaintiff in this regard. The directed verdict in favor of Belleville Area College was proper.

Finally, we note that third-party plaintiffs have made no argument on appeal with respect to the allegation contained in their third-party complaint that the college was negligent in failing to notify the appropriate persons that the air purifiers were not working properly. Accordingly, we will not address this point.

■■■ In their reply brief, third-party plaintiffs ask us to strike the answer brief of third-party defendant Belleville Area College for the reasons that case authority cited therein is erroneous and misleading, factual contentions are not supported by citations to the record on appeal, and several factual contentions are improperly cited to the record on appeal. Supreme Court Rule 341 sets forth certain requirements with regard to appellate briefs with which, third-party plaintiffs argue, the college has failed to comply. (134 Ill. 2d R. 341.) However, Rule 341 is not a limitation upon the jurisdiction of a court of review but only an admonishment to the parties. (*Swanson v. Board of Police Commissioners* (1990), 197 Ill. App. 3d 592, 597, 555 N.E.2d 35, 39.) Thus, where none of the purported violations are so flagrant as to hinder or preclude review, striking of the brief is generally unwarranted. (*In re Marriage of Betts* (1987), 155 Ill. App. 3d 85, 91, 507 N.E.2d 912, 916.) Where the brief is sufficient to allow us to review the merits of the appeal, in the interest of justice, we will deny a motion to strike. The answer filed by Belleville Area College is more than sufficient to allow us to review the merits of the appeal and the motion of third-party plaintiffs to strike the brief is hereby denied.

Third-party plaintiffs' complaint against American Air Filter Company, Inc., alleges that AAF was negligent in:

    a. failing to inspect the installation of the air handling units to assure that they conformed to their own recommendations;

b. performing the inspections because it failed to ascertain that the air purifier had not been installed in accordance with its own recommendations; and

c. failing to notify the third-party plaintiffs that the air purifier had not been installed in conformance with its own recommendations and requirements when AAF knew or should have known of said condition and had assumed the duty to make such notification.

On appeal, AAF argues that it cannot be found liable for contribution because it was found not liable to plaintiff on plaintiff's complaint. Plaintiff's complaint had included a claim against AAF in count III, alleging that as a result of certain design and/or manufacturing defects the air purifier was not reasonably safe. Specifically, count III alleges:

"a) The equipment was designed to be installed in such a manner that the filters could not be changed without subjecting the Plaintiff to danger of injuring himself;

b) No catwalks or other supports were designed and/or manufactured to be erected in order to assist persons required to change the air filters of the system."

At the close of plaintiff's case, AAF moved for a directed verdict on plaintiff's complaint. This motion was granted. AAF did not seek at that time a directed verdict on the third-party complaint filed against it for contribution.

AAF is correct that the basis for a contributor's obligation to contribute rests on his liability in tort to the injured party, the original plaintiff. (*J.I. Case Co. v. McCartin-McAuliffe Plumbing & Heating, Inc.* (1987), 118 Ill. 2d 447, 462, 516 N.E.2d 260, 267.) Thus, where a defendant is found not liable to plaintiff under a theory of negligence, that defendant cannot be found liable to contribute to a judgment against a codefendant based on a theory of negligence. This is based in part on the rule of collateral estoppel, which holds that once an issue has been litigated and a final judgment entered thereon, it may not be relitigated. (See *Esworthy v. Norfolk & Western Ry. Co.* (1988), 166 Ill. App. 3d 876, 880, 520 N.E.2d 1044, 1046-47.) Where it has been judicially determined that a defendant is not a tortfeasor *vis-a-vis* a plaintiff, it cannot be a joint tortfeasor *vis-a-vis* a codefendant and may not be held liable to that codefendant for contribution. *Esworthy*, 166 Ill. App. 3d at 880, 520 N.E.2d at 1047.

However, there is no requirement that the basis for contribution mirror the theory of recovery asserted in the original action. (*J.I. Case Co.*, 118 Ill. 2d at 462, 516 N.E.2d at 267.) In the instant case,

plaintiff sought to recover from AAF on the basis of products liability. Judgment was entered in favor of AAF on that theory. However, no determination was made as to whether AAF might be liable to plaintiff on the basis of negligence, and third-party plaintiffs are not estopped from seeking contribution from AAF, as a joint tortfeasor, on the basis of AAF's negligence toward plaintiff. This is precisely what third-party plaintiffs have done.

However, we find that the directed verdict in favor of third-party defendant AAF was proper in that AAF owed no duty to plaintiff and could not, therefore, have acted negligently with respect to plaintiff. In any action for negligence, in order to establish liability, a defendant must have breached a duty owed to the plaintiff. (*Wimmer v. Koenigseder* (1985), 108 Ill. 2d 435, 440, 484 N.E.2d 1088, 1091.) Third-party plaintiffs present no facts or law to support a finding of a duty owed by AAF to plaintiff.

It is not sufficient that a complaint merely allege a duty; the plaintiff must allege facts from which the law will raise a duty. (*Duncan v. Rzonca* (1985), 133 Ill. App. 3d 184, 190, 478 N.E.2d 603, 606.) A duty is an obligation imposed by the law upon a person which requires the person to conform to a certain standard of conduct for the protection of another against an unreasonable risk, and whether under the facts of a case such a relationship exists between two parties as to require that legal obligation to be imposed upon one for the benefit of the other is a question of law to be determined by the court. (*Duncan*, 133 Ill. App. 3d at 191-92, 478 N.E.2d at 607.) The imposition and scope of a legal duty is dependent not only on the factor of foreseeability but includes consideration of the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden upon the defendant. *Duncan*, 133 Ill. App. 3d at 192, 478 N.E.2d at 607-08.

In the instant case, an employee of AAF testified that after an AAF unit is installed, a representative of AAF visits the location to "set the power packs," check out the units and make sure the control boards are "okay." The AAF representative makes sure the units function properly and also pulls the filters out to be sure there is sufficient room to remove them for servicing.

On September 17, 1980, Robert Frederick, an AAF employee, did a "start up check" on the air purifier unit in question here. He testified that he checked out the mechanics of the unit and opened the access doors. If he could visibly see that the unit was placed four or more feet from any obstruction, he would not actually pull the filters out. If, however, he could see that it was close, he might pull the filt-

ers out just to be sure there was sufficient clearance to remove the filters. He knew that AAF recommended four feet of clearance to remove the filters. Frederick did not remember whether he actually removed the filters on the air purifier in question.

If there was a problem in removing the filters, Frederick would sometimes write it up in his report. If the clearance was merely close but removal was possible, he would not report it; if removal was impossible, he would report it. It was not Frederick's responsibility to meet with the contractor on the job to make him aware of any problems. Frederick would advise the AAF sales office of any problems. Frederick did not report the insufficient clearance on the air purifier in question and did not advise the sales office that this might be a problem. Frederick was able to remove the filters.

Frederick testified that he cannot control what a contractor does or how the units are installed. His only job is to start the unit up and make sure it operates. Even if Frederick noted that there was less than four feet of clearance, he could not tell the contractor to move the unit or modify installation. Frederick's only job is to make sure the units function or operate properly, and it was not his job to inspect the installation to ensure compliance with the contract or the manufacturer's recommendations. The report Frederick prepares is for the use of AAF, not for the architect or contractor.

Based upon the relationship of the parties in the instant case, we conclude that AAF owed no duty to plaintiff. Absent a duty to plaintiff, AAF cannot be found liable for contribution, and its motion for directed verdict at the close of all the evidence was properly granted.

There is no relationship at all between plaintiff, an employee of Belleville Area College, which had nothing to do with the construction itself, and AAF, the manufacturer of the air purifier, whose only responsibility was to manufacture a reasonably safe product and be sure that it operated properly. AAF had no control over the placement or installation of the air purifier. As Robert Frederick testified, had the installer installed the air purifier upside down, AAF could have done nothing about it. While AAF did a "start up check" after installation, the only purpose of this check was to be sure the air purifier operated properly. AAF had no responsibility to ensure that the air purifier was installed safely.

While the third-party complaint alleges that AAF had assumed the duty to inform the third-party plaintiffs if the air purifiers were not installed in conformance with the manufacturer's recommendations, there is no evidence in the record to support this allegation. The evidence is to the contrary, i.e., that AAF had only the duty to

ensure that the units, however they were installed, operated properly. AAF fulfilled this duty.

AAF had no duty to plaintiff to inspect the air purifier unit to be sure it was installed in accordance with the manufacturer's recommendations and no duty to plaintiff to advise third-party plaintiffs if the air purifier unit was not so installed. Accordingly, AAF is not liable for contribution, and the directed verdict was properly granted.

We hereby reverse the judgment of the circuit court of St. Clair County in favor of defendants WHGK, Inc., Hellmuth, Obata, Kassabaum, Inc., and Fritz, Inc., and against plaintiff, Alvin Taake, and remand this cause for a new trial on plaintiff's complaint. We also hereby affirm the judgment of the circuit court of St. Clair County in favor of third-party defendants Belleville Area College and American Air Filter Company, Inc., and against third-party plaintiffs WHGK, Inc., and Hellmuth, Obata, Kassabaum, Inc.

Affirmed in part; reversed and remanded in part.

GOLDENHERSH, P.J., concurs.

JUSTICE HARRISON, concurring in part and dissenting in part:

I agree with the majority that plaintiff is entitled to a new trial on his claims against WHGK, Inc.; Hellmuth, Obata, Kassabaum, Inc. (HOK); and Fritz, Inc. Because a new trial is necessary as to those claims, I believe that we should also order a new trial on the third-party claims by HOK and Fritz, Inc., against American Air Filter (AAF) and Belleville Area College (BAC). At this point we cannot know precisely what evidence will be adduced in the course of the retrial of the underlying action, but we should not assume that it will merely be a rerun of the initial litigation. Plaintiff's underlying action was and is factually intertwined with the third-party claims, and in the course of presenting his case against WHGK, HOK and Fritz, Inc., a second time, plaintiff may well bring to light additional facts which show that AAF and BAC were negligent or guilty of misconduct and that such negligence or misconduct was a proximate cause of plaintiff's injury. If that happens, there would certainly be a valid basis for a claim for contribution against BAC and AAF by WHGK and HOK. Under the majority's disposition, however, the possibility of bringing such a contribution claim has now been completely foreclosed. I see no justification for such a result. Accordingly, I would reverse and remand for a new trial not only on the underlying action but on the contribution claims as well.