Mary Miller, Appellee, v. Edward P. Russell, Appellant.

Gen. No. 40,682.

Opinion filed November 27, 1939.

RIDER & THUMA, of Chicago, for appellant; CHESTER D. KERN, of Chicago, of counsel.

J. KENTNER ELLIOTT, of Chicago, for appellee.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

In an action begun May 4, 1937, for personal injuries, upon trial by jury there was a verdict for plaintiff in the sum of $2,000, on which the court overruling defendant's motion for a new trial, entered judgment and defendant appeals. It is contended for reversal that the evidence fails to disclose plaintiff was in the exercise of due care; that the evidence does not prove defendant was guilty of any negligence; that the court erred in denying defendant's motion for a new trial;

and that the damages are excessive and the verdict the result of passion and prejudice.

Plaintiff, Mary Miller, was a widow about 67 years of age. She fell and was injured in the basement of defendant's home on May 14, 1936. Less than a week prior to the time she was injured she was employed by defendant to serve as a cook. The home was on Astor street in Chicago, fronted east and was four stories high. The main entrance was on the east. To the right and north of this main entrance there was a door leading to the basement. This door opened onto a platform about 4 feet, 3 inches long and 4 feet wide. From the platform a stairway of twelve steps led to the floor of the basement. The steps were 10 inch tread with 7½ inch risers. At the lower end this stairway connected with a passageway in the basement which ran from east to west to the elevator and on into other parts of the basement. On the wall to the right, as an entrant descended the stairway, there was a handrail or banister. From the foot of the stairway the passageway continued straight west about 17 feet to the door of an elevator leading to the upper floors of the home. Plaintiff's room was on the third floor. About 13 feet, 6 inches from the foot of the stairway and in the passageway were two steps with 12 inch treads and 7 inch risers leading to the door of the elevator, which was directly in front of the steps and 4 feet to the west. At the steps there was a jog south of about 3 feet in the passageway. From there the passageway ran west leading to the laundry and other rooms. At the entrance, at the head of the stairs and in the center of the ceiling above the platform, was a light fixture with a bulb which was operated by a switch at the right of the entrance door. This switch also turned on another light in the ceiling of the basement, which was 13 feet to the west and south of the two steps in the passageway and 9 feet beyond the elevator. The light at the head of the stairs and the

light in the ceiling southwest of the elevator were both 50 kilowatts. The floor of the basement was cement. There was a light in the elevator controlled by a switch inside of it, and another light just outside the elevator controlled by another switch outside of it. Plaintiff had been shown the lighting system and switches by Mrs. Johnson, who was her predecessor in defendant's home.

The household of defendant consisted of himself, Mrs. Christie (his daughter), his grandson and a maid. Defendant also employed a janitor. The kitchen was on the second floor.

On the trial plaintiff was the only occurrence witness. She testified she was injured on Thursday night about 10:30 p. m. This Thursday was her "day out." She went from the home at about 3:00 p. m. She says that in going out she took the elevator to the basement, then went east by the passageway and up the stairway to this side door. She says everything at that time was lighted up. She had received from her employer a key to the basement door, and the evidence justifies the inference there was a direction that she should enter and leave the home by this basement door. She returned about 10:30 p. m. on the evening of the same day. She opened the door with the key. She says, "It was pitch dark, everything." She turned the switch at the head of the stairs with her right hand. She says she got "very little, a small light. It was a very small light"; that when she turned the switch, "Well, it is first a little light, it don't light, you know, it is such a little light, it didn't light." "Q: 'Did a light come on when you turned it?' A: 'Yes, it come on, but it was all dark.' " Plaintiff says that she walked down the stairs and in the passageway toward the elevator, and at the two steps she fell. She lay upon the cement floor for about a half hour. No one came so she slid on her left side to the elevator, opened the door, turned on the switch in the elevator

and was taken upstairs by it. She then pushed a button and called for help. The maid came and later told her defendant had called the doctor. The maid took plaintiff to plaintiff's own room. The next morning the doctor said she would have to go to the hospital. She stayed in defendant's home until Saturday, then she says, at the request of Mrs. Christie, she went to the home of her daughter. On Monday she was taken to Ravenswood Hospital, where she stayed over night. The next day she went to the County Hospital. Medical and other testimony shows that she sustained severe injuries including the misplacement of her shoulder. If defendant is liable the damages are not excessive.

The complaint charged defendant was negligent in two respects. First, in failing to have lights installed sufficient to light the passageway at the two steps and, secondly, in failing to install and maintain handrails in the passageway at the steps. It is suggested by defendant that the judgment should be reversed because the evidence fails to show that plaintiff at and before the time of her injury was in the exercise of due care. It is necessary in this State that there be affirmative proof of such care, but when there is such proof the question of the weight to be given to the evidence and the final question of whether a plaintiff is in the exercise of due care is for the jury. There is proof here from which the jury could find due care. Plaintiff's testimony is to the effect that she turned on the light. It does not appear that there was anything else she could do except to walk carefully as possible under the circumstances. There is no suggestion that she was negligent in any particular way. It is suggested that when she noticed the way was dark she might have requested leave to enter by the main door. We are not impressed with this suggestion. The plaintiff was a servant and the way in which she was to enter and leave the home had been clearly indicated to her. The key was given her for that purpose.

The contention that plaintiff was guilty of contributory negligence as a matter of law or the verdict against the weight of the evidence on this point cannot be sustained.

It is suggested and argued at length that defendant was not guilty of any negligence in the construction and maintenance of this passageway for the plaintiff. Plaintiff's testimony is to the effect that she turned on the switch but that notwithstanding the light which appeared was insufficient. It was the duty of the defendant to furnish plaintiff a reasonably safe way in which she might enter the home where her work was to be done. A plat of the home prepared by Mr. Doyle, employed by the plaintiff for that purpose, is in evidence and pictures of the stairway and passageway procured by the plaintiff are also in evidence. These show the measurements as heretofore indicated. They also show a handrail on the stairway but no handrail at the two steps in the passageway. The light in the elevator and in the ceiling outside of it were not on, and no way was provided by which plaintiff could turn these lights on until she reached the elevator. She fell before she reached it. The plat of the basement in evidence shows that the light which was supposed to turn on from the switch at the top of the stairway was behind the elevator and 13 feet distant from the two steps. The questions of whether this construction was faulty and whether the light provided was sufficient were questions for the jury. There were no windows in the basement. In the absence of sufficient artificial light it would be at all times dark.

The defendant argues earnestly that the defects in the passageway were obvious and open and that defendant as to these assumed the risk. Much reliance is placed on *Burke v. Crimmins*, 256 Mass. 14, 152 N. E. 43. In that case the electric lighting system in the home where plaintiff was employed had been disabled by a severe storm, of which the plaintiff had full knowl-

edge. The employer showed plaintiff, who was only recently employed, her way upstairs by a lamp or candle which the employer held in her hand. The plaintiff voluntarily attempted to return without any light, fell, and was injured. The Massachusetts court held plaintiff assumed this risk. The cases are distinguishable in that in the *Burke* case, plaintiff, without any direction, undertook to pass down the stairway in a dangerous situation in a way different from that indicated by her employer as proper. Here plaintiff entered by a way prepared by the employer, and as the jury had a right to find, by his direction. A review of all the cases would unduly extend this opinion. Practically all of them will be found in the annotation to *Eaton v. Wallace* (Mo.), 287 S. W. 614, 48 A. L. R. 1291, 1295. The general rule that a master is bound to provide a safe place to work covers a situation such as appears in this case. 39 Corpus Juris, pp. 349, 350, secs. 468, 469.

Here the evidence shows defendant provided two ways for entering his home. He and his family entered by one way; the plaintiff, his employee, was directed to enter by another. The jury has found that the way prepared for plaintiff to enter was not reasonably safe. There was evidence from which the jury could so find, and also that plaintiff was ordered to use this way. It is true the defendant, the janitor, and Mrs. Johnson all testified in substance that on the morning after the accident the lights were in the usual condition. If this were true it would have been possible to prove that under the system adopted the light thrown on the steps where plaintiff fell was sufficient. There was no such proof. We hold the questions of the negligence of defendant, the contributory negligence of plaintiff and the assumed risk by the plaintiff were for the jury, and the judgment will be affirmed.

*Affirmed.*

O'CONNOR and McSURELY, JJ., concur.