Albert E. Coselman, Sr., Administrator of the Estate of Hazel Coselman, Deceased, Plaintiff-Appellant, v. Ralph Schleifer and Ann Schleifer, Defendants-Appellees.

Gen. No. 67–148.

Second Judicial District.

August 23, 1968.

Allen S. Greene, John R. Mackay, and Corrigan, Mackay, Quetsch & O'Reilly, of Wheaton, for appellant.

Gates W. Clancy and James S. Mills, of Geneva, for appellees.

MR. JUSTICE DAVIS delivered the opinion of the court.

Hazel Coselman (herein called plaintiff) brought this action against the defendants, Ralph and Ann Schleifer, to recover for injuries sustained by her while she was working in the Schleifers' home. The plaintiff died subsequent to trial and Albert E. Coselman, Sr., Administrator of her estate, was substituted as party plaintiff. The jury awarded a verdict of $25,000 to the plaintiff; the trial court entered judgment for the defendants notwithstanding the verdict, and the plaintiff appealed.

The plaintiff did weekly cleaning work for the defendants, and had worked for them at their home in this capacity for about eight years. The occurrence out of

which the injury arose took place on the landing and stairs to the basement at about 11:00 a.m., on January 22, 1965. It was raining at the time and apparently was rather dark outside. The plaintiff was on her way to the basement to get a clean bathroom rug and had nothing in her hands or arms.

The landing at the top of the stairs was approximately three by four feet. The back door permitted entry into this landing, which was two steps down from the kitchen. There was no light fixture on the landing itself; one was partially installed, but not yet completed or operable. A light switch was located on the landing which operated the basement lights. It does not appear that these lights were turned on, but the kitchen lights were on.

A gray granite cornerstone, about 4 inches thick, 10 inches high and 16 inches long, was standing on the landing, as were some empty bottles. Mr. Schleifer's work shoes were on the steps. The plaintiff testified that she saw all of these items. A dark-colored, rubber-backed rug, containing some metallic thread, was on the landing. This rug was used as a foot cleaner upon entry to the house by the back door.

The plaintiff testified that she did not see this rug, although she was aware that it usually was there; and that she had stepped down the stairs to the basement with one foot when her other foot caught on the rug. She described it as all crumpled up, although she had not seen it.

The stairs were steep; the first step was narrow or short, and a handrail was located on the left side of the steps. The plaintiff testified that she could not reach this rail from the landing, and that when she started down the stairs to the basement, she had to stoop over because of the low ceiling clearance.

The plaintiff was familiar with the landing and stairs and their condition as described. She had been up and

down the stairs innumerable times. She had not complained about the landing or stairs nor the fact that shoes and bottles normally were there and she did not feel that it was her place to do so.

She testified that as she fell she tried to grab the railing, but could not reach it; that she did not touch the stairs as she fell, but fell directly to the basement floor, striking her head and suffering severe injuries; and that she then called out for help to her husband, who was the only other person in the house. The defendants were away at the time.

There was evidence that the plaintiff, who was then seventy-two years old, had taken medication for hypertension for quite some time. Her doctor's records indicated that she had suffered from dizziness from time to time. Part of the history taken by her doctor after the fall stated that plaintiff did not know exactly how she fell—whether she slipped or was dizzy. For purposes of this appeal, however, we assume that the plaintiff did not black out or become dizzy and fall, but rather, tripped on the rug on the landing as heretofore related.

 Whether the trial court was correct in overturning the verdict of the jury must be tested by the standard set forth in Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 510, 229 NE2d 504 (1967); that is, whether all of the evidence, when viewed in its aspect most favorable to the plaintiff, so overwhelmingly favors the defendants that no contrary verdict based on that evidence could ever stand.

 The parties agree that the common law does not make an employer a guarantor of the safety of his employees. It does, however, require that an employer provide his employee a reasonably safe place in which to work. Those risks which an employee, in turn, assumes, are spelled out in Mack v. Davis, 76 Ill App2d 88, 221 NE2d 121 (1966), at page 97:

"An employee, when he engages in employment, assumes 'the risks of known dangers, and such as are so obvious that knowledge of their existence is fairly to be presumed.' Chicago & E. I. R. Co. v. Heerey, 203 Ill 492, 497, 68 NE 74 (1903) ; also see: Stone v. Guthrie, 14 Ill App2d 137, 148, 149, 144 NE2d 165 (1957). However, such ordinary risks do not include the negligence of the employer. Kolfski v. Railroad Supply Co., 235 Ill 146, 156, 85 NE 274 (1908) ; Stone v. Guthrie, supra. The employer must use reasonable care to provide for the safety of his employees. If the employer fails to exercise such care, the risks resulting are said to be extraordinary and are not assumed by the employee unless he knows of the risks and understands them, or ought to know and understand them. Wheeler v. Chicago & W. I. R. Co., 267 Ill 306, 319, 108 NE 330 (1915) ; Olsen v. Pigott, 39 Ill App2d 191, 198, 188 NE2d 361 (1963).

"The employee thus assumes all ordinary risks and all extraordinary ones of which he knows, or ought to know, and the dangers of which he appreciates, or ought to appreciate and of which he makes no complaint. Stone v. Guthrie, 14 Ill App2d 137, 149, 150, 144 NE2d 165 (1957)."

During the eight years the plaintiff had worked for the defendants, there had never been a light on the landing between the back door and the basement steps. The only light in the landing was that which came through the glass in the back door, and that from the kitchen and the basement lights. As the plaintiff pointed out, the light available from the glass in the back door varied, depending upon the conditions outside. It is apparent from the plaintiff's testimony that even on a dark day this light was sufficient for the plaintiff to see the

bottles and cornerstone on the landing and the shoes on the stairs.

■ An employee assumes all of the usual and customary risks of his or her employment. In doing household work for others, this includes risks attendant to the unusual physical characteristics of the particular household which are known or obvious to the employee. It is undisputed that the defendants' home had a basement stairway that certainly was less than ideal. The plaintiff's duties included going up and down this stairway, and she was fully aware of the state of the lighting on the landing and the condition of the stairs. She had made no complaint and had offered no objection thereto.

The plaintiff also was aware of the throw rug which was usually on the landing floor. She described the landing, the stairway and the items on the landing, including the rug, in her testimony. While throw rugs always constitute some hazard, their use does not mean that the employer has failed to provide a reasonable safe place in which to work.

■ The risks involved in the use of the landing and stairs were not only those which were normally incident to such employment, but were also those which were known and obvious to the plaintiff; and it was proper for the trial court to hold as a matter of law that such risks were assumed by her. Kelly v. Fletcher-Merna Co-operative Grain Co., 29 Ill App2d 419, 425-427 incl., 173 NE2d 855 (1961); Stahl v. Dow, 332 Ill App 233, 242, 243, 74 NE2d 907 (1947); Huff v. Illinois Cent. R. Co., 279 Ill App 323, 330 (1935); Wehrhahn v. Stern Ullman Co., 178 Ill App 363, 366 (1913).

The case at bar, unlike those cited by the plaintiff, does not involve an employee obeying a direct order on command of his employer to perform a dangerous task (Illinois Steel Co. v. Schymanowski, 162 Ill 447, 44 NE 876 (1896); Chicago Anderson Pressed Brick Co. v. Sobkowiak, 148 Ill 573, 36 NE 572 (1894)); or a direction to

128

use a dark passageway (Miller v. Russell, 302 Ill App 165, 23 NE2d 775 (1939)), or to follow a course unknown to the employee (Packard v. Kennedy, 4 Ill App2d 177, 124 NE2d 55 (1955)).

The question of the contributory negligence of the plaintiff is distinct and apart from that of assumption of risk. Kelly v. Fletcher-Merna Co-operative Grain Co., supra 425, 426; Chicago & E. I. R. Co. v. Heerey, 203 Ill 492, 502, 68 NE 74 (1903). The plaintiff testified that she did not see the rug but knew that she had tripped on the rug because it was usually there; however, there was sufficient light for her to see the bottles, shoes and cornerstone, which were all smaller than the rug. The testimony and exhibits indicate that the rug contrasted with the linoleum which covered the floor.

The plaintiff knew of the condition of the landing and stairs. By her own testimony, it is clear that she could or should have seen the rug had she been attentive. Under these circumstances, we believe that the plaintiff was also guilty of contributory negligence as a matter of law. Pedrick v. Peoria & Eastern R. Co., supra, 503, 510; Pantlen v. Gottschalk, 21 Ill App2d 163, 170, 157 NE2d 548 (1959); Day v. Barber-Colman Co., 10 Ill App2d 494, 511, 135 NE2d 231 (1956).

Thus, we conclude that the trial court was correct in granting the judgment notwithstanding the verdict not only on the basis that the plaintiff assumed the risks involved, but also on the ground that she was guilty of contributory negligence. Consequently, the judgment is affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and SEIDENFELD, J., concur.