JOSEPH T. ABADIE, Plaintiff-Appellant, v. GARFIELD PAUL ROYER *et al.*, Defendants-Appellees.

Second District No. 2—90—1180

Opinion filed June 27, 1991.—Rehearing denied July 29, 1991.

Raymond P. Concannon and Michael P. Concannon, both of Raymond P. Concannon, Ltd., of Chicago, for appellant.

Lewis W. Terlizzi, of Brittain, Ketcham, Strass, Terlizzi, Flanagan, Weir, Johnson & David, P.C., of Elgin (Daniel E. Compton, of counsel), for appellees.

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiff, Joseph Abadie, appeals from an order of the circuit court which granted defendants' motion for summary judgment as to all counts of his second amended complaint. The record contains no indication as to the basis of the trial court's decision. This cause of action arose from the collision of a car being driven by plaintiff on a public highway and a horse owned by defendants, Garfield and Alvilda Royer. On appeal, plaintiff raises the following issues: (1) the Animal Control Act (Ill. Rev. Stat. 1987, ch. 8, par. 366) did apply to the facts of this case; (2) the trial court wrongly held that defendants were not negligent in their ownership and control of the horse; (3) the court below erred in finding that no question of fact existed as to defendants' alleged violation of the Illinois Domestic Animals Running at Large Act (Ill. Rev. Stat. 1987, ch. 8, par. 1); (4) the amended complaint stated a cause of action under the *res ipsa loquitur* doctrine; and (5) the trial court erred in permitting defendants' inadmissible conclusions to support their motion for summary judgment.

■ ■ We initially note that summary judgment is a drastic and extraordinary remedy, and it must be granted only when the movant's right to judgment as a matter of law is absolutely clear and free from doubt. (*Purtill v. Hess* (1986), 111 Ill. 2d 229.) Summary judgment should be granted by the trial court only when it is satisfied that the pleadings, affidavits, and other evidence present no genuine issue of material fact. (*Knief v. Sotos* (1989), 181 Ill. App. 3d 959.) A trial court must construe the record before it most strictly against the movant; conversely, the court must view the record in a light most favorable to the nonmoving party. (*Knief*, 181 Ill. App. 3d at 963.) A reviewing court's task is to determine whether the trial court correctly

concluded that there were no genuine issues of material fact, and, if so, whether judgment for the moving party was correct as a matter of law. *International Amphitheatre Co. v. Vanguard Underwriters Insurance Co.* (1988), 177 Ill. App. 3d 555.

Plaintiff first argues that the Animal Control Act applies to the facts of this case. On April 18, 1988, at approximately 2 a.m., plaintiff was driving his automobile westbound on Illinois Route 38 in Campton Township, Kane County. Plaintiff momentarily looked down into the car's interior. When he resumed looking ahead into the traffic lane, he saw a horse directly in his way. Plaintiff swerved to miss the horse but collided with it, killing the animal. The automobile then left the pavement and struck a fence. It was later determined that the horse, Sunny, belonged to defendants. As a result of the collision, plaintiff suffered facial lacerations, loss of vision and other related injuries.

In count I of his second amended complaint, plaintiff averred a violation of the Animal Control Act, which reads in relevant part as follows:

> "If a dog or other animal, without provocation, attacks or injures any person who is peaceably conducting himself in any place where he may lawfully be, the owner of such dog or other animal is liable in damages to such person for the full amount of the injury sustained." (Ill. Rev. Stat. 1987, ch. 8, par. 366.)

The trial court, without explanation, granted defendants' motion for summary judgment as to count I.

In *McQueen v. Erickson* (1978), 61 Ill. App. 3d 859, this court addressed the issue of whether the legislature intended the Animal Control Act to apply to situations where domestic animals, such as horses, were running at large. The facts of the instant cause are similar to those of *McQueen*, wherein the plaintiff's automobile collided with one or more of defendant's horses, which had escaped and run out onto a highway.

After determining that the Animal Control Act applied to horses, this court found that the legislature, in adding language "or other animals" to the statute, did not intend to repeal outright or by implication any other statute, including the Domestic Animals Running at Large statute. The *McQueen* court concluded:

> "Herein there is not a triable issue as to whether the defendant's horses caused plaintiffs' injuries and damages but only the question of law as to whether the legislature, with this amendment, contemplated the imposition of liability under the 'dog-bite' statute for damages caused by horses running at large. We hold that this catastrophic change in the law of do-

mestic animals running at large could not have been contemplated by the legislature by the mere addition of the phrase 'or other animals' to the 'dog-bite' statute. [Citation.] Such a result would impose a great injustice on owners of horses and other domestic animals who heretofore have been liable only under the running at large statute for the activity of their horses where the owner has failed to use reasonable care in restraining his horse and where the owner had knowledge that his horse was running at large." 61 Ill. App. 3d at 864.

*McQueen* has been cited with approval in other jurisdictions. In *Zears v. Davison* (1987), 154 Ill. App. 3d 408, plaintiff's car struck defendant's cow, which was wandering loose. Plaintiff sued defendant under both the Domestic Animals Running at Large and Animal Control statutes. Finding that the Animal Control Act did not apply to these facts, the Appellate Court, Third District, stated:

"Very persuasive in our decision today is the case of *McQueen v. Erickson* (1978), 61 Ill. App. 3d 859, 378 N.E.2d 614, where the court refused to apply the Animal Control Act, despite the fact that the requirements were technically met, to a plaintiff who was injured when her car struck the defendant's horses running at large on the highway. The court in *McQueen* found that the statute was inapplicable to animals of the domestic variety who run at large and are covered under the running-at-large statute. To hold otherwise would work an injustice on animal owners who could then be liable under two statutes." 154 Ill. App. 3d at 411-12.

In *Moore v. Roberts* (1990), 193 Ill. App. 3d 541, plaintiff was injured at a racetrack when competing race horses broke through the racetrack enclosure, threw the jockeys and ran among the crowd. Plaintiff's complaint contained two counts premised on the Animal Control Act. The trial court dismissed both counts, and plaintiff appealed, arguing that the Animal Control Act should apply. Defendants argued that under the facts only the Domestic Animals Running at Large statute was applicable. The *Moore* court found that the race horses were clearly not grazing at pasture. The Appellate Court for the Fourth District then stated:

"In addition, in *McQueen v. Erickson* [citation], the appellate court held the Illinois Domestic Animals Running at Large Act created an exception to the [Animal Control] Act and, where the running-at-large statute will not support a cause of action, the general rule, the Act, will apply. For this reason, the Act,

not the running-at-large statute, is the applicable law here." 193 Ill. App. 3d at 543.

Plaintiff argues that *McQueen* is not determinative because it conflicts with our supreme court's decision in *Harris v. Walker* (1988), 119 Ill. 2d 542. In *Harris*, plaintiff was injured in a fall from a horse which he had rented from defendant's riding stable. The *Harris* court found that the legislature did not intend to create a statutory cause of action for a plaintiff renting a horse from a riding stable. The supreme court held that by accepting the risks of horseback riding, plaintiff removed himself from that class of persons protected by the Animal Control Act. Thus, *Harris*, which made no reference to *McQueen*, is not determinative of the instant case, wherein the facts and issues are entirely different.

Plaintiff also cites *Chittum v. Evanston Fuel & Material Co.* (1980), 92 Ill. App. 3d 188, in which the decedent was riding a horse owned by defendant. The horse ran out of control onto a highway, where it collided with another defendant's cement truck, causing decedent's death. In *Chittum*, the Appellate Court, First District, found that, under the Animal Control Act, a "dog or other" animal can cause injury "one, by an aggressive violent action designed to inflict injury and two, by an action which is in itself harmless but under a particular set of facts results in an injury." (92 Ill. App. 3d at 191.) Accordingly, the court held that the amended complaint stated a valid cause of action as to those counts based upon the Animal Control Act. Further, the *Chittum* court determined that the Domestic Animals Running at Large statute was not applicable to the facts appealed at bar.

We note that a number of factors distinguish *Chittum* from the case at bar. *Chittum* made no reference to this district's holding in *McQueen v. Erickson*. Further, the *Chittum* court was not required to decide whether the Domestic Animals Running at Large Act or Animal Control Act applied to the facts before it. Also, the *Chittum* accident arose from a situation in which a horse carried its rider onto the highway, rather than an owner's alleged failure to enclose a horse.

■ It is readily apparent that *Chittum* and *McQueen* stand for opposite views as to the scope of the Animal Control Act. We believe that *McQueen* reaches the proper result, namely, that the owners of domestic animals, including livestock, are subject only to liability which arises from the Domestic Animals Running at Large statute. Accordingly, we find that the Animal Control Act did not apply to the subject case, and the trial court did not err in granting defendants'

motion for summary judgment as to count I of the second amended complaint.

Next, plaintiff maintains that the court below should not have granted defendants' motion for summary judgment regarding count III of the second amended complaint, which was based on the Domestic Animals Running at Large statute. The parties do not disagree that said statute applies to the case at bar; they differ as to whether there is any genuine issue of material fact.

In support of his contention, plaintiff cites numerous passages from defendants' deposition, which, he alleges, indicate their failure to keep Sunny properly enclosed. We agree.

The Domestic Animals Running at Large statute reads in relevant part:

"No person or owner of livestock shall allow livestock to run at large in the State of Illinois. All owners of livestock shall provide the necessary restraints to prevent such livestock from so running at large and shall be liable in civil action for all damages occasioned by such animals running at large; Provided, that no owner or keeper of such animals shall be liable for damages in any civil suit for injury to the person or property of another caused by the running at large thereof, without the knowledge of such owner or keeper, when such owner or keeper can establish that he used reasonable care in restraining such animals from so running at large." (Ill. Rev. Stat. 1987, ch. 8, par. 1.)

To recover under this statute, plaintiff must allege and prove that defendants did not use reasonable care in restraining the animal and that defendants had no knowledge that the animal was running at large. *O'Gara v. Kane* (1976), 38 Ill. App. 3d 641.

There is no dispute that defendants were unaware that Sunny was loose until the morning following the accident. The remaining element required by the statute is whether defendants exercised reasonable care in restraining Sunny from running at large.

In his deposition, Garfield Royer testified that when he left for work on April 18, he was unaware that Sunny had escaped from the horse barn. At work, he was called by his wife, Alvilda, who told him that Sunny was not in the barn. The pony that shared the stall in the barn with Sunny was wandering loose within the barn's interior. Normally, the pony and Sunny would be within the stall in the morning. Further, the latch to the barn's pedestrian door, which led to an unfenced area between the barn and the Royer's house, was not working properly. On the morning in question, Mrs. Royer found a hoof

print in the dirt at the pedestrian door, which was essentially used by the Royers to enter and exit the barn. Mr. Royer admitted that a horse of Sunny's size could push through this door if it were not properly latched. The other barn doors opened onto an enclosed, secure area and were the ones used to take the horses out of and into the barn.

In her deposition, Alvilda Royer conceded that the subject barn door could have been blown open by the high winds which were blowing in the early hours of April 18. Her daughter, who initially discovered Sunny's disappearance, thought the subject door was open when she went to the barn in the morning of April 18 but could not say for sure. Mrs. Royer further conceded that the hoof print found near the subject door was Sunny's, as the other horse and pony were unshod.

■ This deposition testimony demonstrates that material facts are in dispute as to whether defendants used reasonable care in restraining Sunny on the evening of April 17 and/or the early morning of April 18. Based on the record before us, we find that the trier of fact should determine this issue. Accordingly, we hold that the trial court erred in granting defendants' motion for summary judgment as to count III.

Next, plaintiff argues that the trial court should not have granted defendants' summary judgment motion as to counts II and IV of the second amended complaint, sounding in negligence and *res ipsa loquitur*, respectively. We find this contention to be meritless. Under a common-law negligence theory, plaintiff has to show that the animal involved had a "mischievous propensity to commit such an injury and the owner had notice of it or that the injury was attributable to some other neglect on his part." *Domm v. Hollenbeck* (1913), 259 Ill. 382, 385.

In *Forsyth v. Dugger* (1988), 169 Ill. App. 3d 362, the appellate court cited this same portion of *Domm*. In dismissing plaintiff's argument that *Domm* allowed recovery for common-law negligence, the Forsyth court stated:

> "However, we do not so read *Domm*, and no other cases so holding have been brought to our attention. In *Beckert v. Risberg* (1964), 50 Ill. App. 2d 100, 106, [citation], the plaintiff alleged a common law count for recovery asserting defendant was negligent in not keeping his dog secured. The court acknowledged the last clause indicates liability might be predicated on some other neglect, but it observed that the cases have uniformly held that in a common law count alleging injury by a dog, it is necessary to allege and prove the owner's knowl-

edge of the animal's mischievous propensity. This necessity of alleging and proving this knowledge was affirmed by the supreme court." 169 Ill. App. 3d at 367.

This view was echoed in *Zears v. Davison* (1987), 154 Ill. App. 3d 408, 410, wherein the court found under a common-law negligence action, in order to recover, the plaintiff had to prove that the subject animal had a dangerous disposition of which defendant was aware.

 █ Here, there is no evidence of Sunny's "mischievous propensity" or defendants' awareness of same. Consequently, the trial court properly granted summary judgment as to count II (negligence) of the second amended complaint. Having so found, we do not need to address plaintiff's argument regarding the propriety of count IV (*res ipsa loquitur*). "*Res ipsa loquitur* is not a separate theory of recovery; rather, it is a rule of evidence which gives use to an inference or presumption of negligence by circumstantial evidence." (*National Tea Co. v. Gaylord Discount Department Stores, Inc.* (1981), 100 Ill. App. 3d 806, 809.) If, as here, the underlying negligence action is unfounded, then a *res ipsa loquitur* cause of action cannot stand.

██ Finally, plaintiff argues that defendants' conclusions in support of the motion for summary judgment were inadmissible under Supreme Court Rule 191(a) (134 Ill. 2d R. 191(a)) and the trial court erred in not striking them. Said rule states in relevant part:

"Affidavits in support of and in opposition to a motion for summary judgment *** shall not consist of conclusions but of facts admissible in evidence ***." 134 Ill. 2d R. 191(a).

██ Admittedly, certain deposition statements made by defendants in regard to their theory that an unknown person entered the barn prior to the subject accident and led Sunny through the pedestrian doorway should not have been included to support the motion for summary judgment. While the court erred in not striking said portions of the motion, we find such error harmless as the trial court had available to it sufficient facts upon which to make its judgment.

For the reasons stated above, we affirm the trial court's order granting summary judgment as to counts I, II and IV of the second amended complaint. Further, we reverse said order as to count III and remand this cause of action for further proceedings consistent with this opinion.

Reversed and remanded with directions.

GEIGER and BOWMAN, JJ., concur.