# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Allendorf v. Redfearn*, 2011 IL App (2d) 110130

---

| | |
|---|---|
| Appellate Court Caption | KEITH ALLENDORF, Plaintiff-Appellee, v. CLIFFORD REDFEARN and CAROL REDFEARN, Defendants-Appellants. |
| District & No. | Second District<br>Docket No. 2-11-0130 |
| Filed | July 25, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the injuries plaintiff farmhand suffered while helping his employers round up a bull that had gotten loose, the appellate court answered two certified questions relating to whether the trial court properly denied the employers' motion to dismiss plaintiff's complaint by stating that the common-law negligence claim was not barred by the ATV Statute or the absence of a duty owed to plaintiff by defendants, because plaintiff was defendants' employee, that relationship gave rise to a duty to provide a safe place to work, he agreed to their request for help, they provided him with an ATV, the roundup occurred on defendants' property and his assistance constituted valuable consideration, and in answer to the second question, the appellate court declared that a claim under the Running at Large Act was precluded because plaintiff was defendants' employee and he was attempting to exercise control over the bull. |
| Decision Under Review | Appeal from the Circuit Court of Jo Daviess County, No. 10-L-10; the Hon. William A. Kelly, Judge, presiding. |

| Judgment | Certified questions answered; cause remanded. |
|---|---|
| Counsel on Appeal | Michael Resis, of SmithAmundsen LLC, of Chicago, and Raymond J. Melton, of SmithAmundsen LLC, of Rockford, for appellants. |
| | Thomas J. Nack, of Nack, Richardson & Kurt, of Galena, for appellee. |
| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion. Justices Zenoff and Hudson concurred in the judgment and opinion. |

**OPINION**

¶ 1   This case concerns the viability of the claims brought by the plaintiff, Keith Allendorf, a farm employee of the defendants, Clifford and Carol Redfearn. After the plaintiff was injured attempting to assist the defendants in recapturing a bull that had escaped confinement, he sued the defendants, asserting a common-law negligence claim and a claim under the Illinois Domestic Animals Running at Large Act (Running at Large Act) (510 ILCS 55/1 *et seq.* (West 2010)). The trial court denied the defendants' motion to dismiss these claims. We agreed to decide two certified questions relating to whether the trial court properly denied the motion and now answer those questions and remand for further proceedings.

¶ 2                                    BACKGROUND

¶ 3   The following facts are taken from the allegations of the plaintiff's first amended complaint[1] which, at this point in the proceedings, must be taken as true. *Kehoe v. Saltarelli*, 337 Ill. App. 3d 669, 675 (2003). The defendants owned a farm located along both sides of North Miner Road in Jo Daviess County. The plaintiff and the defendants lived on the farm. The plaintiff worked as a farm employee of the defendants.

¶ 4   On August 15, 2008, Carol Redfearn came to the plaintiff's door and told him that a bull owned by the defendants had gotten out of its confinement and was running loose in the area. The plaintiff alleged that the bull running loose created an ongoing emergency situation for anyone who happened to be in the area, including the plaintiff. He also alleged that the

---

[1]The first amended complaint was the operative complaint when the trial court denied the defendants' motion to dismiss. The trial court later granted the plaintiff leave to file a second amended complaint that was substantially similar to its predecessor but contained one additional allegation not relevant here. We therefore address ourselves to the first amended complaint.

defendants knew that the bull had escaped from the same confinement area in the recent past. Carol Redfearn enlisted the plaintiff's assistance in attempting to retrieve the bull. For use in these efforts, the defendants provided the plaintiff with an all-terrain vehicle (ATV) they owned. The plaintiff pursued the bull, which eventually ran to a pasture owned by the defendants. The plaintiff was not familiar with this particular pasture and, unbeknownst to him, there were several stumps in the pasture that were obscured from view by long grass. The defendants did not warn him about the presence of the stumps. When the plaintiff drove into the pasture to try to round up the bull, the ATV hit one of the stumps. The plaintiff suffered broken ribs and twice had to have his lungs drained, and he alleged that he incurred medical expenses, lost income from employment, and suffered pain and permanent injury.

¶ 5        The plaintiff asserted two causes of action against the defendants. Count I alleged that the defendants violated the Running at Large Act in that their bull got loose and this situation was a proximate cause of the plaintiff's injuries. This count also alleged that the defendants failed to use reasonable care to provide adequate restraints to prevent the bull from getting out. Count II was a common-law negligence claim. The plaintiff asserted that the stumps created a hazardous condition on the defendants' land, that the defendants knew or should have known of the presence of the stumps, and that they had sufficient time to remedy or protect against the condition prior to the accident. The plaintiff alleged that the defendants had the following duties: to exercise reasonable care to maintain their property in a reasonably safe condition, to restrain their animals in a safe manner, and to provide the plaintiff with a reasonably safe place to work. The plaintiff alleged that the defendants breached their duties by: failing to maintain the bull's confinement area, including not repairing defects as needed; continuing to keep the bull on the premises despite the lack of an adequate containment area; permitting the hazardous condition (stumps) to exist on their land; and failing to warn the plaintiff about this condition. Finally, the plaintiff alleged that the defendants' negligence was the proximate cause of his injuries.

¶ 6        The defendants attacked the complaint with a combined motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2010)). The defendants asserted that count I of the complaint was insufficient under section 2-615 of the Code (735 ILCS 5/2-615 (West 2010)) because it did not properly allege that the bull was "running at large" at the time of the occurrence. Their primary attack, however, was brought under section 2-619 of the Code (735 ILCS 5/2-619 (West 2010)), under which a complaint may be dismissed on the basis of any affirmative matter that completely negates the cause of action or prevents recovery. The defendants argued that the plaintiff's injuries, which they characterized as arising from an ATV accident, were not within the scope of the harm addressed by the Running at Large Act and that no valid claim could be brought under that statute. They also argued that they could not be liable under a negligence theory, because a different statute, section 11-1427(g) of the Illinois Vehicle Code (ATV Statute) (625 ILCS 5/11-1427(g) (West 2010)) generally immunizes property owners from liability for ATV accidents on their property. The defendants lastly argued that they owed no common-law duty to the plaintiff in connection with his operation of the ATV on their farm.

¶ 7        The trial court denied the defendants' motion to dismiss, finding that the accident was sufficiently within the type of danger foreseeable from a violation of the Running at Large

Act, and that the legislature did not intend the ATV Statute to apply where the plaintiff was an employee of the defendants who was operating the ATV at the defendants' behest and within the scope of his employment. However, at the defendants' request, the trial court certified the following questions, answers to which it found would materially advance the litigation:

"Whether the Court properly denied the Defendants['] *** Motion to Dismiss *** on the grounds that common law and 625 ILCS 5/11-1427(g) do not bar recovery when the Plaintiff was a farm employee who was injured while operating an ATV on the Defendant[s'] property in attempting to rescue a bull which had escaped from its confinement area but which was still located upon property owned by the Defendant[s].

Whether the trial court properly denied the Defendants['] *** Motion to Dismiss *** on the grounds that 510 ILCS 55/1 [the Running at Large Act] is applicable when the Plaintiff was a farm employee who was injured while operating an ATV on the Defendant[s'] property in attempting to rescue a bull which had escaped from its confinement area but which was still located upon property owned by the Defendant[s]."

We granted the defendants' application for leave to appeal and now address the certified questions.

¶ 8                                                    ANALYSIS

¶ 9        Both certified questions arose in the context of the defendants' motion to dismiss and involve purely legal issues of statutory construction. We therefore consider the questions *de novo*. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006).

¶ 10                                  The Applicability of the ATV Statute

¶ 11       We begin by considering the first question certified by the trial court: whether the ATV Statute bars the plaintiff's negligence claim against the defendants. That statute provides:

"(g) Notwithstanding any other law to the contrary, an owner, lessee, or occupant of premises owes no duty of care to keep the premises safe for entry or use by others for use by an all-terrain vehicle *** or to give warning of any condition, use, structure or activity on such premises. This subsection does not apply where permission to drive or operate an all-terrain vehicle *** is given for a valuable consideration ***." 625 ILCS 5/11-1427(g) (West 2010).

The defendants argue that this statute immunizes property owners such as themselves from liability when someone is injured on their land while using an ATV, as occurred here.

¶ 12       To determine the intent of a legislative enactment such as the ATV Statute, we begin by examining the language of the statute, which is the most reliable indicator of the legislature's objectives in enacting a particular law. *Yang v. City of Chicago*, 195 Ill. 2d 96, 103 (2001). The statutory language must be afforded its plain and ordinary meaning, and where the language is clear and unambiguous we must apply the statute without resort to further aids

-4-

of statutory construction. *Lee v. John Deere Insurance Co.*, 208 Ill. 2d 38, 43 (2003).

¶ 13 These principles lead us to conclude that the ATV Statute does not bar the plaintiff's claim against the defendants for negligence in maintaining the premises in a reasonably safe condition for his use of the ATV or in failing to warn of an unsafe condition. The plain language of the ATV Statute expresses the legislature's intent to exempt owners, lessees, and occupants of land from the claims of "others" relating to the others' use of the land for riding ATVs. However, here the plaintiff has pled that he had a right to be on the premises, in that he resided on the defendants' property and thus was an "occupant," as well as an employee (and therefore an agent) of the defendants. Accordingly, he must be viewed as an "occupant" or "owner" rather than an "other" under the ATV Statute, and that statute's declaration that owners, lessees, and occupants owe no duty of care to keep the premises safe for ATV use by others, or to warn others of danger, does not apply to bar the plaintiff's claim.

¶ 14 In addition, the plaintiff comes within the exception identified in the statute "where permission to drive or operate an [ATV] *** is given for valuable consideration." 625 ILCS 5/11-1427(g) (West 2010). The plaintiff, an employee of the defendants, has alleged that the defendants asked him to assist in rounding up their escaped bull, that he agreed to do so, and that they provided him with an ATV to use in doing so. We have no difficulty in concluding that this scenario encompasses (1) the property owners' permission (indeed, request) for the plaintiff to operate an ATV on their property, and (2) valuable consideration (the plaintiff's assistance in rounding up the bull) to the property owners. For both of these reasons, we hold that the ATV Statute does not bar the plaintiff's negligence claim and that the trial court did not err in denying the defendants' motion to dismiss that claim to the extent that the motion was premised on the ATV Statute.

¶ 15 Common-Law Duty

¶ 16 The first certified question also asked whether the plaintiff's negligence claim should be barred because the defendants owed no duty at common law to safeguard the plaintiff against an ATV accident on their property. The plaintiff argues that, under long-established law, employers owe employees a duty of care to provide a reasonably safe place to work (*Coselman v. Schleifer*, 97 Ill. App. 2d 123, 126 (1968)), and at the time of the accident he was performing work that the defendants had asked him to do, using the ATV that they provided to him. The defendants seek to apply a different analysis of duty. While not refuting the argument that they may have owed the plaintiff a duty based on the employer-employee relationship, the defendants argue that the existence of any such duty must also satisfy four factors that are often used to determine whether, as a matter of policy, a legal duty should be imposed in a particular situation. As identified in *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 436-37 (2006), these four factors are: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." The defendants argue that under these four factors, they owed no common-law duty to the plaintiff, because placing a duty on them to make their entire farm safe for ATV operation would be too great a burden when measured against the possibility that an accident would occur. The issue of

-5-

whether a defendant owed a plaintiff a duty is a legal one for the court to decide. *Id*. at 430.

¶ 17    The defendants are incorrect to argue that, in determining whether one party owed a legal duty to another, the balancing test contained in the four factors is more important than the relationship between the parties. As the supreme court explained in *Marshall*, "[t]he touchstone of this court's duty analysis is to ask whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Id*. at 436. Thus, a court first looks to the relationship between the parties to see if that relationship gives rise to a duty, and then weighs the four factors only in considering whether the circumstances of the injury warrant an exception to that duty. *Nelson v. Aurora Equipment Co.*, 391 Ill. App. 3d 1036, 1042 (2009).

¶ 18    Here, there is no doubt that the employer-employee relationship between the parties gave rise to a duty on the part of the defendants to provide a safe place for the plaintiff to work. *Coselman*, 97 Ill. App. 2d at 126. This is one legal duty that applies here; there may be others as well, such as the duty owed by a property owner to an invitee. *Marshall*, 222 Ill. 2d at 437. In considering whether the four factors warrant finding an exception to the defendants' duty, we hold that they do not. As to the first factor, the foreseeability of the injury, the plaintiff has alleged that the defendants knew or should have known that there were stumps on their property. Accordingly, it was foreseeable that the plaintiff could be injured while riding an ATV (as the defendants allegedly asked him to do) over the property. As to the likelihood of the injury, we have no evidence regarding the number of stumps on the property and thus cannot determine how likely the ATV was to encounter one, but the likelihood that injury would result from any such encounter was high. The defendants argue that the third factor favors them because the cost of making their farm safe for ATV use would be great. Again, at this stage there is no evidence regarding this cost, but we note that this is not the only remedy or precaution available to the defendants: they could refrain from directing their employees to ride ATVs over their land if that land is not safe for ATV use or, at the minimum, they could warn their employees regarding the hazardous conditions on the land. As there is no suggestion that either of these options would be particularly burdensome, we cannot conclude that the burden of guarding against the injury would be high. Similarly, we have no basis for concluding that the fourth factor–negative consequences of imposing a duty on the defendants–is present here. Thus, the four factors do not warrant finding an exception to the duty that the defendants owed the plaintiff. See *Nelson*, 391 Ill. App. 3d at 1042.

¶ 19    The defendants cite various cases in support of their argument that no legal duty exists under the four factors, but all of the cases are distinguishable. In *West v. Faurbo*, 66 Ill. App. 3d 815 (1978), a 13-year-old boy was injured when he swerved his bicycle away from the sidewalk to avoid a truck entering the parking lot and struck a concrete block that lined the driveway on the property. He sued both the truck driver and the property owner, and the trial court entered summary judgment in favor of the property owner. The reviewing court affirmed, finding that the owner had not breached its legal duty to refrain from wilfully and wantonly causing injury to the plaintiff, who was a licensee upon the property rather than a trespasser or an invitee. *Id.* at 818-19. The reviewing court also found that the owner did not otherwise have a legal duty with relation to the concrete blocks, which were hidden by long

grass, because the risk of injury was slight where the blocks were several feet away from the sidewalk, making it unlikely that pedestrians or others would encounter them, and the potential burden on landowners was great. *Id*. at 819. *West* is distinguishable from this case, in which the plaintiff's vehicle was designed for use off-road and the plaintiff was directed to use it to round up the bull, an activity that might reasonably be expected to lead the plaintiff to a wide range of possible places to which the bull might go. Thus it was reasonably foreseeable that the plaintiff would encounter whatever hidden obstacles might exist on those portions of the premises where he was required to go in performing his employment duties.

¶ 20 Two other cases cited by the defendants, *Wotiz v. Gruny*, 281 Ill. App. 3d 50 (1996), and *Hamilton v. Green*, 44 Ill. App. 3d 987 (1976), are similarly distinguishable. In *Wotiz*, the reviewing court agreed with the trial court that it was unforeseeable that an acquaintance of the defendant would climb into a far corner of a flower bed to retrieve mail he had dropped from the defendant's porch, and there encounter an obstruction that caused him to slip and fall, because a flower bed is "an area traditionally avoided by everyone." *Wotiz*, 281 Ill. App. 3d at 52 (but see *id*. at 55 (Chapman, J., dissenting, on the ground that there was a factual question as to whether it was foreseeable that someone on porch would enter flower bed to retrieve an item he dropped)). In *Hamilton*, the reviewing court found that the defendants, who repeatedly allowed their ducks to wander the neighborhood, did not owe a duty toward the plaintiff, who fell on his own property while chasing the ducks. *Hamilton*, 44 Ill. App. 3d at 993. Both of those cases involved voluntary undertakings that led the plaintiffs to the situations in which they were injured. Here, by contrast, the defendants themselves enlisted the plaintiff's assistance in retrieving their escaped bull, gave him an ATV to use in doing so, and do not appear to have restricted him from entering any part of their property. The different sets of facts in *Wotiz* and *Hamilton* make them inapposite to this case.

¶ 21 The final case cited by the defendants is *Taake v. WHGK, Inc.*, 228 Ill. App. 3d 692 (1992), in which an employee sued his employer after he tore a muscle in his arm while attempting to change an air filter (one of his regular maintenance duties) in a space that he alleged was too small. The reviewing court held that the employer did not owe any duty toward the employee, because there was no evidence that it knew of the small size of the space or that the lack of room would make changing the air filter dangerous, and additionally the employer did not control the design or construction of the space but merely accepted the building as built after it was completed, and therefore it would have been very expensive to remedy the inadequate space. *Id.* at 713. Most of these findings are more relevant to a conclusion that the employer did not breach its duty of care toward the employee than to the conclusion that the employer owed no duty to the employee, and indeed the court gave the lack of any breach as an alternate ground for its decision. *Id.* Accordingly, we do not find *Taake* helpful or dispositive here. In sum, the trial court did not err in denying the motion to dismiss the plaintiff's negligence claim on the ground that the defendants owed the plaintiff no common-law duty.

¶ 22           Running at Large Act

¶ 23 The second certified question was whether the plaintiff could bring a claim under the

Running at Large Act under the facts alleged in his complaint. The Act states:

> "No person or owner of livestock shall allow livestock to run at large in the State of Illinois. All owners of livestock shall provide the necessary restraints to prevent such livestock from so running at large and shall be liable in civil action for all damages occasioned by such animals running at large; Provided, that no owner or keeper of such animals shall be liable for damages *** caused by the running at large thereof, without the knowledge of such owner or keeper, when such owner or keeper can establish that he used reasonable care in restraining such animals from so running at large." 510 ILCS 55/1 (West 2010).

In his complaint, the plaintiff alleged that the defendants' bull had escaped its enclosure and was loose; that he was injured while attempting to round up the bull at the defendants' request; and that the defendants were negligent and did not use reasonable care in restraining or confining the bull, which had gotten loose on previous occasions. Leaving aside the defendants' initial contention that the plaintiff did not properly allege the element of "running at large" (the correction of this defect was the reason for the filing of the second amended complaint), the sufficiency of the plaintiff's pleading of this claim is not at issue. Rather, the defendants argue that the Running at Large Act does not apply in a situation such as that alleged here, where the plaintiff was injured neither by the bull itself nor by an attempt to avoid being injured by the bull, but in an ATV accident while he was attempting to round up the bull.

¶ 24    In support, the defendants cite to *File v. Duewer*, 373 Ill. App. 3d 304 (2007). Because *File* involves similar facts and contains some language that is, at least on its face, relevant here, we take some time to discuss the case. In *File*, the plaintiff was a carpenter who was working on the defendant's property. The defendant raised cattle, about 70 of which broke out of their enclosure and began roaming at large in nearby cornfields. The plaintiff, who himself had experience raising cattle, was asked to assist in rounding up the cattle. In the course of doing so, he was injured by a nervous heifer that charged him. The plaintiff brought suit against the defendant under the Running at Large Act, although at one point he attempted to amend his complaint to state a claim under the Animal Control Act (510 ILCS 5/16 (West 2006)) but was prevented from doing so by the trial court, which believed that the Running at Large Act provided the more appropriate cause of action. The trial court later granted summary judgment for the defendant on the ground that the defendant had established a complete defense to the claim under the Running at Large Act, through evidence that the cattle enclosure was reasonably and adequately maintained prior to the time the cattle broke out and that the cattle escaped without the defendant's knowledge.

¶ 25    The plaintiff appealed, contending that the trial court wrongly foreclosed his claim under the Animal Control Act. The reviewing court held that the Animal Control Act, not the Running at Large Act, was applicable despite the fact that the animals at issue were "livestock" within the meaning of the Running at Large Act. See 510 ILCS 55/1.1 (West 2006) ("livestock" means "bison, cattle, swine, sheep, goats, equidae, or geese"). The court explained the relationship between the two statutes thus:

> "The Animal Control Act, since its 1973 amendment, covers all animals owned

by someone and provides the owner is liable for attacks or injuries caused by their animal. The more specific Running at Large Act has been held to be an exception to the more general Animal Control Act ***." *File*, 373 Ill. App. 3d at 308.

The court then went on to find that, although the animals were livestock, they were no longer "running at large" because the defendant, as well as the plaintiff, was engaged in trying to round them up and thus was actively asserting control over them. Because of this, the situation was different from that in many cases under the Running at Large Act, where the owner of the livestock negligently or improperly allowed the livestock to wander freely. *Id*. at 308-09. The court held that the claim was most appropriately brought under the Animal Control Act, not the Running at Large Act, reversed the trial court's order regarding the Animal Control Act claim, and remanded for further proceedings. *Id*. at 309.

¶ 26     *File* is one of several cases from other districts of the appellate court in which the court has considered which animal liability statute better applies to the facts in the case before it–the Animal Control Act, under which an animal's owner is liable for any damage caused by his animal to someone who is where he has a right to be, or the Running at Large Act, under which the owner can avoid liability by showing that he was not negligent in allowing the animal to escape its confinement. See, *e.g.*, *Id.* (Fourth District); *Moore v. Roberts*, 193 Ill. App. 3d 541 (1990) (Fourth District); *Chittum v. Evanston Fuel & Material Co.*, 92 Ill. App. 3d 188 (1980) (First District). Contrary to those cases, in this district we have held that if the animal running loose is defined as "livestock" under the Running at Large Act, then that statute must be applied, not the Animal Control Act. *Abadie v. Royer*, 215 Ill. App. 3d 444, 449 (1991) (*overruled on other grounds by Corona v. Malm*, 315 Ill. App. 3d 692 (2000)); *McQueen v. Erickson*, 61 Ill. App. 3d 859, 862 (1978); see also *Zears v. Davison*, 154 Ill. App. 3d 408 (1987) (Third District case reaching the same conclusion). In addition, the case at hand raises only the issue of whether the plaintiff can state a claim under the Running at Large Act when that statute is considered in isolation, not whether the Animal Control Act or the Running at Large Act is the more appropriate vehicle for his claim. Accordingly, *File* is neither controlling nor directly on point.

¶ 27     The defendants argue that some of the analysis in *File* applies here, however. In reaching its conclusion, the *File* court stated that the Running at Large Act traditionally did not embrace cases in which animals escaped through no fault or negligence of the owner and the owner made "immediate and suitable" efforts to recover the animals. *File*, 373 Ill. App. 3d at 308. The *File* court relied upon this historical application of the statute in deciding that animals were no longer "running at large" if the animals' owner was engaged in active pursuit of them. The defendants point to this holding and argue that therefore the Running at Large Act does not apply here, either. The defendants contend that an injury from an ATV accident that occurred while the plaintiff was attempting to round up an escaped animal is not the type of injury that the Running at Large Act was intended to protect against.

¶ 28     The defendants are correct that there are no reported Illinois cases in which a person recovered under the Running at Large Act for injuries sustained during an attempt to round up loose livestock. To some extent, however, that appears to be the result of the particular facts in the few "roundup" cases that we have discovered. As noted, in *File* the trial court found that the plaintiff could not recover under the Running at Large Act because the

-9-

defendant had taken proper precautions to restrain the cattle and their escape was not the result of negligence. *File*, 373 Ill. App. 3d at 306. The reviewing court then held that the Animal Control Act provided the more applicable cause of action. *Id*. at 308. In *Malott v. Hart*, 167 Ill. App. 3d 209, 211 (1988), the court applied the doctrine of assumption of the risk in holding that the plaintiff, who was experienced in dealing with cattle and volunteered to assist in herding the defendant's cattle into a corral but was trampled in the process, could not recover. (Also, *Malott* involved a claim under the Animal Control Act rather than the Running at Large Act.) Because of the factual differences in these cases and the lack of any other authority for treating "rounding up" injuries as a separate class of injuries, we decline to adopt a general rule that a plaintiff is barred from asserting a claim under the Running at Large Act if his or her injuries were sustained during the owner's attempts to regain control over loose livestock.

¶ 29 Nevertheless, we think the defendants are correct that the Running at Large Act was not intended to protect against the injuries the plaintiff sustained here. In reaching this conclusion, we look to the body of precedent developed in connection with the sister statute of the Running at Large Act, the Animal Control Act.

¶ 30 Our supreme court has stated, in construing the scope of the Animal Control Act, that "the legislature intended only to provide coverage under the statute for plaintiffs who, by virtue of their relationship to the owner of the *** animal or the lack of any such relationship, may not have any way of knowing or avoiding the risk that the animal poses to them." *Harris v. Walker*, 119 Ill. 2d 542, 547 (1988). Thus, the thrust of the Animal Control Act is toward protecting members of the general public, who cannot reasonably be expected to appreciate or be able to avoid the risk posed by the animal. Shortly after *Harris* was handed down, the court in *Wilcoxen v. Paige*, 174 Ill. App. 3d 541 (1988), addressed the question of whether one who is within the definition of an "owner" of an animal under the Animal Control Act (Ill. Rev. Stat. 1987, ch. 8, ¶ 352.16) could bring suit under that statute for injuries received from the animal. In that case, the owner and operator of a dog boarding and grooming business sued the owner of a dog for injuries she sustained when the dog, which was boarding at her facility, attacked her. The court began by noting that, as someone who had the dog in her care at the time of the attack, the plaintiff fell within the definition of an "owner" under the Animal Control Act. *Wilcoxen*, 174 Ill. App. 3d at 543. The court then considered the statute as a whole and concluded that "[t]he thrust of the Act is to encourage tight control of animals in order to protect the public from harm" and "prevent one's animals from harming others." *Id*. The court held that, where a person has accepted responsibility for the care of an animal, that person may not bring suit for injuries that resulted from her or his own failure to control the animal. *Id*. In essence, a person in the shoes of an animal's owner could not bring a claim under the Animal Control Act against the legal owner of the animal.

¶ 31 The relationship between the plaintiff and the attacking animal may also prevent the application of the Animal Control Act. In *Ennen v. White*, 232 Ill. App. 3d 1061, 1066 (1992), the court held that the rider of a horse could not bring suit under that statute:

"Once the rider mounts the horse, the rider is no longer a bystander or observer but is someone who has asserted dominion over the animal and is an active partner with

-10-

the animal in recreational activity. The rider assumes control and responsibility for the horse. While a cause of action may be stated under other theories of liability, there is none under the Act." *Id.*

¶ 32    In *Meyer v. Naperville Manner, Inc.*, 262 Ill. App. 3d 141 (1994), this court undertook a thorough review of this line of cases to clarify the principles involved. Generally, liability under the Animal Control Act is limited to situations in which the plaintiff is an innocent bystander. We observed that, after *Harris*, "courts have increasingly looked at the relationship of the plaintiff to the owner of the animal in determining whether the plaintiff is in the class of persons to be protected by the Act." *Id.* at 148. In addition, "courts have also looked to the plaintiff's relationship with the animal," so if the plaintiff was a custodian of the animal or was otherwise attempting to exercise control over it at the time of the injury or attack, the plaintiff was outside the protection of the Animal Control Act. *Id.* at 148-49 (citing *Ennen*, *Wilcoxen*, and other cases). We commented:

> "While we recognize that the assumption of risk is a strong underlying theme in these decisions ***, it is evident that the plaintiffs were also not held [to be] in the class of persons protected by the Act because, in assuming control of the animal, they could no longer be realistically viewed as innocent bystanders ***. Alternatively, it can be said that one who voluntarily assumes control of the animal places himself in the position of the owner." *Id.* at 149.

Applying these principles, we held in *Meyer* that the minor plaintiff could not recover for injuries sustained while riding a horse, because "[o]bjectively, she cannot be considered an innocent bystander or a person within the class of persons protected by the Act." *Id.* at 150. We emphasized that our decision rested not on the plaintiff's subjective ability to appreciate the risk involved in riding horses, but "on the fact of plaintiff's relationship to the owner and to the animal itself which relationship objectively excludes her from the protected class." *Id.*

¶ 33    In the time since, it has become well established that a plaintiff who is within the definition of an "owner" under the Animal Control Act (because the animal is in the plaintiff's care or control) cannot bring suit under that statute for injuries caused by the animal. See *VanPlew v. Riccio*, 317 Ill. App. 3d 179, 183 (2000) (pet sitter could not maintain claim under the Animal Control Act for injuries from attack by a dog she was caring for); *Docherty v. Sadler*, 293 Ill. App. 3d 892, 896 (1997) (minor pet sitter fell within the statutory definition of "owner" and could not recover for injuries received from a dog that was under his care); *Eyrich v. Johnson*, 279 Ill. App. 3d 1067, 1070-71 (1996) (where plaintiff was an experienced farmhand and it was undisputed that part of his job was to care for the boar that attacked him, farmhand was "clearly not the type of plaintiff that the legislature intended to protect under the Act"). By the same token, a plaintiff is within the scope of the Animal Control Act's protection if he or she has no relationship to either the attacking animal or its owner. See *Beggs v. Griffith*, 393 Ill. App. 3d 1050, 1058 (2009) (potential buyer of farm who was injured by horse while viewing the property was an innocent bystander and was within the "class that the Act seeks to protect"); *Carl v. Resnick*, 306 Ill. App. 3d 453, 462 (1999) (because plaintiff neither exercised control over horse that kicked her as she was riding a different horse nor had any contractual relationship with the defendant owner of the kicking horse, she could maintain a claim under the Animal Control

-11-

Act); *cf. Kindel v. Tennis*, 409 Ill. App. 3d 1138, 1140 (2011) (where there were questions of fact as to whether caring for bull was part of plaintiff farmhand's job, summary judgment on Animal Control Act claim was improper).

¶ 34    We recognize, of course, that these cases under the Animal Control Act do not apply directly to claims such as the one before us that are brought under the Running at Large Act. Nevertheless, the statutes have substantial similarities and we believe that the principles involved in the Animal Control Act cases are relevant here as well. First, both statutes relate to the same subject matter, as both address the scope of the liability of an animal's owner for injuries caused by that animal. The two statutes also share the goal of protecting the general public from animal-related injury. See *Harris*, 119 Ill. 2d at 547 (purpose of Animal Control Act is to protect those who lack a relationship with the animal's owner and therefore cannot appreciate or avoid the risk posed by the animal); *File*, 373 Ill. App. 3d at 308 (purpose of Running at Large Act is to provide redress for injuries occasioned by livestock wandering loose). And, significantly, the two statutes contain almost identical definitions of who is liable as an "owner." Under the Animal Control Act, an "owner" is "any person having a right of property in an animal, or who keeps or harbors an animal, or who has it in his care, or acts as its custodian." 510 ILCS 5/2.16 (West 2010). The definition of an "owner" in the Running at Large Act is the same:

> " 'Owner' means any person who (a) has a right of property in an animal, (b) keeps or harbors an animal, (c) has an animal in his care, or (d) acts as custodian of an animal." 510 ILCS 55/1.1 (West 2010).

Under both of these statutes, the person potentially liable for an animal's actions is its "owner," and that term is defined broadly. The differences between the two statutes–the Running at Large Act has been viewed as a more narrow statute that applies only when the situation involves an injury caused by livestock running loose (*File*, 373 Ill. App. 3d at 308)–do not relate to the issues of the animal's ownership and who is within the protection of the statute, and thus do not affect our analysis. We therefore believe that, just as an animal's "owner" cannot recover under the Animal Control Act, neither can someone who falls within the definition of an "owner" under the Running at Large Act recover under that statute. The plaintiff here was a farm employee of the defendant owners of the bull, bringing him within the definition of "owner" under the Running at Large Act. Moreover, he has alleged that, at the time of the accident, he was involved in attempting to herd the bull "back to its containment area." The conjunction of these two facts is, we hold, sufficient to show both that he had a relationship with the defendant owners of the bull and that he was attempting to exercise control over the bull itself when he was injured. Accordingly, he cannot assert a claim under the Running at Large Act in the circumstances present here.

¶ 35                                    CONCLUSION

¶ 36    As provided in more detail elsewhere in this opinion, we answer the certified questions as follows:

> (1) The plaintiff's common-law negligence claim is not precluded by either the ATV Statute or the absence of a duty owed by the defendants to the plaintiff, and

therefore the trial court properly denied the defendants' motion to dismiss that claim; and

(2) The plaintiff's claim under the Running at Large Act is precluded by reason of the plaintiff's relationship with the defendants as their farm employee and his relationship with the escaped bull, over which he was attempting to exercise control at the time of the accident, and therefore the trial court's denial of the defendant's motion to dismiss that claim was improper.

¶ 37    Certified questions answered; cause remanded.